UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION



Constance ("Connie") Kramer,
572 Stratford Avenue
St. Louis, Missouri 63130

                                        Plaintiff,

v.                                                      Case No. _____

Denny Hoskins, in his official capacity
as Secretary of State of Missouri,
Office of the Secretary of State
600 W. Main Street
Jefferson City, Missouri 65101

                                        Defendant.


**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

(42 U.S.C. § 1983 – Violation of HAVA Title III Rights; Procedural Due Process;

First Amendment Petition Clause)


INTRODUCTION

1. Plaintiff brings this action to set aside and enjoin the Missouri Secretary of State's unlawful

refusal to accept and adjudicate her notarized HAVA Title III complaint. The Secretary

dismissed the filing for "loss of jurisdiction," asserting a 30-day post-certification deadline and

falsely claiming Plaintiff failed to provide the name and address of the violator. Both grounds are

unlawful, the second is factually incorrect, and together they deny Plaintiff her federal statutory

right to enforce HAVA § 303's mandate that Missouri maintain a single, official statewide voter

registration list.

1

2. Plaintiff seeks (i) a declaration that the Secretary's as-applied 30-day bar and dismissal conflict with HAVA's administrative-complaint framework and are preempted; (ii) a mandatory injunction compelling the Secretary to accept, docket, and adjudicate Plaintiff's HAVA complaint on the record and to issue a final determination within HAVA's 90-day timeframe; and (iii) preservation orders for relevant statewide MCVR data pending resolution.

3. All references to the Help America Vote Act of 2002 ("HAVA") in this Complaint cite to Title 52 of the United States Code, where HAVA is currently codified. HAVA was originally enacted as Public Law 107-252 and was initially codified at 42 U.S.C. §§ 15301 et seq., but has been recodified to 52 U.S.C. §§ 20901 et seq.

JURISDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States, including the Supremacy Clause (U.S. Const. art. VI, cl. 2), 42 U.S.C. § 1983, and 52 U.S.C. § 21083 (HAVA § 303). This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3)–(4), and 2201–2202.

5. Venue is proper in the Western District of Missouri because Defendant resides and performs official duties in Jefferson City, Missouri, and the events at issue occurred here. 28 U.S.C. § 1391(b).

PARTIES

6. Plaintiff Constance ("Connie") Kramer is a registered Missouri voter and taxpayer who participates in federal elections. She voted in the November 2024 federal general election and intends to vote in both the August 2026 federal primary election and the November 2026 federal

2

general election. She filed a notarized HAVA Title III administrative complaint with the Missouri Secretary of State on October 14, 2025, and requested an on-the-record hearing with a 90-day determination as provided by 52 U.S.C. § 21112(a)(2).

7. Defendant Denny Hoskins is the Secretary of State of Missouri. He is sued in his official capacity for prospective relief under Ex parte Young, 209 U.S. 123 (1908).

LEGAL BACKGROUND

8. HAVA Title III § 303 requires Missouri to maintain a single, uniform, official, centralized statewide voter-registration list as the official list for all federal elections. 52 U.S.C. § 21083(a)(1)(A)–(B). This provision creates individual federal rights enforceable under 42 U.S.C. § 1983. Colón-Marrero v. Conty-Perez, 813 F.3d 1, 14–22 (1st Cir. 2016); Sandusky County Democratic Party v. Blackwell, 387 F.3d 565, 573 (6th Cir. 2004).

9. HAVA § 402, codified at 52 U.S.C. § 21112, requires states to provide an administrative complaint procedure under which any person who believes a violation "has occurred, is occurring, or is about to occur" may file a notarized complaint, obtain a hearing on the record upon request, and receive a final determination within 90 days of filing (absent an agreed extension). 52 U.S.C. § 21112(a)(2)(B)–(D).

10. The term "person" under HAVA § 402 encompasses natural persons such as Plaintiff, a registered Missouri voter. 52 U.S.C. § 21112(a)(2)(B). As a "person" within the plain meaning of § 402, Plaintiff has standing to seek enforcement of HAVA's requirements through both the administrative complaint process and this § 1983 action.

3

FACTUAL ALLEGATIONS

A. Plaintiff's Participation in Federal Elections and Concrete Injury

11. Plaintiff is a registered voter in St. Louis, Missouri. She cast her ballot in the November 5, 2024 federal general election at her designated polling place in St. Louis.

12. Plaintiff also voted in the November 2022 federal general election and intends to vote in both the August 2026 federal primary election and the November 2026 federal general election.

13. Plaintiff's vote in the November 2024 federal election is recorded in Missouri's statewide computerized voter registration database, the Missouri Centralized Voter Registration system ("MCVR"), which is maintained by the Missouri Secretary of State pursuant to HAVA § 303. 52 U.S.C. § 21083(a)(1).

14. Based on official state and federal reports showing irreconcilable discrepancies among voter turnout numbers, Plaintiff cannot verify that her vote was accurately recorded and counted in the official election results. When three different "official" sources report three materially different totals for the same election, no single official list exists, and individual voters - including Plaintiff - cannot confirm their votes were properly counted in the official tally.

15. Specifically, three authoritative sources report three different totals for voter turnout in the November 2024 federal general election:

   a. The U.S. Election Assistance Commission ("EAC") Election Administration and Voting Survey ("EAVS") reports Missouri's "Total Voter Turnout" as 3,126,837 for the November 2024 general election (published June 30, 2025);

4

b. The Missouri Secretary of State's official certified results webpage reports "Total Votes" of 2,995,327 for the November 2024 general election (announced December 5, 2024); and

c. The MCVR system records 3,022,817 voters as having "voted" in the November 2024 general election (based on post-election snapshot and voter history data).

16. These three numbers differ by 131,510 votes (EAC vs. SOS), 104,020 votes (EAC vs. MCVR), and 27,490 votes (SOS vs. MCVR). Because these three "official" sources cannot all be correct, one or more of these official tallies is necessarily inaccurate. Because Plaintiff's vote is part of the dataset reflected in these conflicting numbers, she cannot confirm whether her vote was properly counted in the official results.

17. The same pattern of irreconcilable discrepancies exists for the November 2022 federal general election, in which Plaintiff also voted:

a. The EAC EAVS reports Missouri's "Total Votes" as 2,304,250 for November 2022 (published June 2023);

b. The Missouri Secretary of State's official certified results report "Total Votes" of 2,069,130 for November 2022 (announced December 9, 2022); and

c. The MCVR system records 2,022,368 voters as having voted in November 2022 (based on voter history data from the three-month post-election upload window allowed under Missouri law).

5

18. These 2022 figures show differences of 235,120 votes (EAC vs. SOS), 281,882 votes (EAC vs. MCVR), and 46,762 votes (SOS vs. MCVR). The pattern of systemic discrepancies across multiple federal election cycles demonstrates an ongoing structural failure, not isolated errors.

19. These systemic discrepancies violate HAVA § 303's requirement that Missouri maintain "a single, uniform, official, centralized, interactive computerized statewide voter registration list" that serves as "the official voter registration list for the conduct of all elections for Federal office in the State." 52 U.S.C. § 21083(a)(1)(A)(i), (B). When the official list (MCVR), the official certified results (SOS), and the official federal report (EAC) do not reconcile by over 100,000 votes, there is no "single" official list as required by federal law.

20. As a registered Missouri voter whose votes in the 2022 and 2024 federal elections are recorded in this defective system, Plaintiff has a concrete and particularized interest in ensuring that Missouri complies with § 303. The ongoing database integrity failures directly affect Plaintiff by preventing her from verifying that her vote counted, undermining her confidence in the integrity of Missouri's election system, and threatening the same problems in the upcoming federal elections in 2026.

21. The defect is structural and continuing. Unless corrected, the same § 303 violation that affected Plaintiff's ability to verify her 2022 and 2024 votes will recur in the August 2026 primary and November 2026 general election, when Plaintiff intends to vote. The HAVA § 402 administrative complaint process is the federal mechanism Congress provided to obtain timely correction of such ongoing violations before the next federal election cycle.

B. Plaintiff's HAVA Administrative Complaint

22. On October 14, 2025, Plaintiff filed a sworn and notarized Title III HAVA Elections Complaint Form with the Missouri Secretary of State's Elections Division. The complaint alleged that Missouri is not maintaining a single, official, centralized statewide voter-registration list as required by 52 U.S.C. § 21083(a)(1)(A)–(B), because official state and federal datasets for the same federal elections do not reconcile.

23. Plaintiff's complaint expressly identified the Respondent on page 3 of the complaint form as: "Missouri Secretary of State – Elections Division, 600 W. Main Street, Jefferson City, MO 65101." It is public knowledge that Denny Hoskins is the Secretary of State of Missouri. The complaint thus identified both the office and its location with specificity.

24. Plaintiff's filing included specific statewide numbers showing the internal inconsistencies among (i) the EAC EAVS report, (ii) the Secretary of State's official certified results, and (iii) the MCVR "voters who voted" counts, as described in ¶¶ 14–18 above. The complaint was supported by exhibits including:

a. Exhibit A – EAC 2024 EAVS "at-a-Glance" table (statewide Total Voter Turnout: 3,126,837; published June 30, 2025);

b. Exhibit B – Missouri SOS 2024 Official Results page (statewide "Total Votes": 2,995,327; announced December 5, 2024);

c. Exhibit C – Missouri 2024 General Election Validity Scorecard showing MCVR statewide voters who voted: 3,022,817;

d. Exhibit D – MCVR 2024 data files with snapshot deltas showing backdated changes;

7

e. Exhibit E – EAC 2022 EAVS table (statewide "Total Votes": 2,304,250; published June 2023);

f. Exhibit F – Missouri SOS 2022 Official Results page (statewide "Total Votes": 2,069,130; announced December 9, 2022);

g. Exhibit G – Missouri 2022 General Election Validity Scorecard; and

h. Exhibit H – Missouri 2022 General Election voter history data (statewide voters who voted: 2,022,368); and

i. Exhibit I – Affidavit from data analyst Daniel Hume documenting MCVR extraction methodology and vote-history totals.

25. Plaintiff alleged in her administrative complaint that this § 303 violation is ongoing and prospective—that is, the violation "is occurring" and "is about to occur" within the meaning of 52 U.S.C. § 21112(a)(2)(B). Plaintiff sought remedies to ensure compliance before the 2026 federal primary and general elections.

26. Plaintiff specifically objected in her administrative complaint to Missouri's self-imposed 30-day post-certification filing limit. Plaintiff noted that this limit is impossible to satisfy for data-grounded complaints because the official EAC EAVS data necessary to document the § 303 violation was not published until June 30, 2025—more than six months after the December 2024 certification of Missouri's election results. HAVA § 402 expressly permits complaints alleging violations that "are occurring" or "are about to occur," which by their nature cannot be tied to a past certification date. 52 U.S.C. § 21112(a)(2)(B).

8

27. Plaintiff requested an on-the-record hearing as provided by 52 U.S.C. § 21112(a)(2)(D) and a final determination within 90 days of filing as required by § 21112(a)(2)(C).

C. The Secretary's Unlawful Dismissal

28. On October 20, 2025, the Secretary of State, through the Elections Division, dismissed Plaintiff's administrative complaint in a one-page letter. The dismissal asserted "loss of jurisdiction" on two grounds:

a. The complaint was not filed "within 30 days of the certification of the election in which the alleged violation occurred" as required by 15 CSR 30-12.010; and

b. Plaintiff failed to "provide the name and address of the person or persons alleged to have committed the violation" of Title III of HAVA.

29. The dismissal letter stated: "The regulation explicitly states that complaints must be filed within 30 days of certification of the election and provide the names and addresses of the person or persons alleged to have committed the violation. Also, the regulation provides no mechanism for the Secretary of State to waive these requirements. As a result of these shortcomings this complaint is dismissed due to loss of jurisdiction."

30. The Secretary's assertion that Plaintiff failed to provide the name and address of the alleged violator is factually false. Page 3 of Plaintiff's administrative complaint expressly identifies the Respondent as "Missouri Secretary of State – Elections Division, 600 W. Main Street, Jefferson City, MO 65101." This information appears on the face of the complaint form in the designated "Respondent" section.

9

31. Moreover, the alleged violation—failure to maintain a single, official, centralized statewide voter registration list as required by 52 U.S.C. § 21083(a)(1)—is a systemic database integrity failure for which the Missouri Secretary of State is directly responsible under HAVA § 303. The Secretary is the state official charged with maintaining the MCVR as Missouri's official statewide voter registration list. The dismissal's assertion that Plaintiff failed to identify the violator is not only factually incorrect but legally nonsensical.

32. The Secretary's application of a 30-day post-certification deadline to a complaint alleging a violation that "is occurring" and "is about to occur," and that necessarily relies on official datasets released months after certification, directly conflicts with HAVA § 402's administrative-complaint design.

33. HAVA § 402 requires states to provide a complaint procedure for violations that "have occurred, are occurring, or are about to occur." 52 U.S.C. § 21112(a)(2)(B). The Secretary's own dismissal letter quotes this language but then enforces a post-certification deadline that makes no sense for ongoing or prospective violations. If a violation "is occurring" (e.g., continuing failure to maintain a single authoritative list across multiple federal election cycles), or "is about to occur" (in the 2026 federal elections), there is no past certification date that can trigger a 30-day filing clock.

34. Furthermore, the 30-day post-certification bar operates as an obstacle to HAVA's remedial scheme because it forecloses Title III complaints based on official federal data that is published months after state certification. The EAC EAVS data for the November 2024 election was published on June 30, 2025 - more than six months after Missouri certified its election results in early December 2024. A complainant seeking to document discrepancies between state and

10

federal official data - as required to show a § 303 violation - cannot possibly satisfy a 30-day post-certification filing deadline when the comparison data does not exist until months later.

35. HAVA § 402 requires states to provide an on-the-record hearing upon request and a final determination within 90 days of filing. 52 U.S.C. § 21112(a)(2)(C)–(D). By refusing to docket and adjudicate Plaintiff's complaint on the record, the Secretary deprived Plaintiff of the process HAVA mandates and denied her the statutory path to remedies directed at future federal elections.

D. Standing and Concrete Injury

36. Plaintiff is a registered Missouri voter who voted in the November 2022 and November 2024 federal elections, and who will vote in the August 2026 federal primary and November 2026 federal general election. She invoked HAVA § 402's administrative complaint process by filing a sworn, notarized complaint on October 14, 2025, and requesting an on-the-record hearing and a final determination within 90 days.

37. The Secretary refused to provide that process, citing a 30-day post-certification bar under state regulation 15 CSR 30-12.010 and falsely claiming the complaint lacked the violator's name and address. The denial of the § 402 hearing and determination is a concrete procedural injury that directly impairs Plaintiff's ability to obtain timely remedies to protect the integrity of her vote before the 2026 federal elections.

38. The injury is fairly traceable to the Secretary's October 20, 2025 dismissal. But for the Secretary's refusal to accept and adjudicate the complaint, Plaintiff would have access to the hearing, investigation, and determination process that HAVA mandates, including the ability to

11

request preservation of critical MCVR data and to obtain findings and remedial orders before the 2026 election cycle.

39. The injury is redressable by an order from this Court compelling the Secretary to accept, docket, and adjudicate Plaintiff's administrative complaint on the record; to schedule a prompt hearing; and to issue a final determination within 90 days. Such relief would restore Plaintiff's access to the § 402 process and provide a pathway to remediate the database integrity failures before the August 2026 primary election.

40. Plaintiff's interest is particularized to her as an individual voter. She is recorded in the MCVR as a voter who cast ballots in the 2022 and 2024 federal elections. Her individual votes are part of the dataset that produced irreconcilable discrepancies of over 100,000 votes among three "official" sources. She will be subject to the same defective system when she votes in 2026 unless the § 303 violation is corrected. The Secretary's refusal to provide the § 402 process prevents the investigation, reconciliation, and preservation steps necessary to protect the integrity and verifiability of her vote in the next federal cycle.

41. These injuries are redressable by this Court. An order compelling the Secretary to accept and adjudicate Plaintiff's administrative complaint would restore Plaintiff's access to the § 402 process, enable vindication of her § 303 rights, and provide a pathway to remediate the database integrity failures before the 2026 federal elections commence.

12

## CLAIMS FOR RELIEF

## COUNT I   42 U.S.C. § 1983 – Violation of HAVA Title III Rights

(Supremacy Clause / Ex parte Young)

42. Plaintiff realleges and incorporates by reference ¶¶ 1–40.

43. HAVA § 303 creates individual federal rights enforceable under 42 U.S.C. § 1983. Colón-Marrero v. Conty-Perez, 813 F.3d 1, 14–22 (1st Cir. 2016) (holding that HAVA § 303's requirement of a centralized statewide voter registration list creates individual rights enforceable under § 1983); Sandusky County Democratic Party v. Blackwell, 387 F.3d 565, 573 (6th Cir. 2004) (recognizing implied right of action under HAVA Title III).

44. Section 303 requires Missouri to maintain "a single, uniform, official, centralized, interactive computerized statewide voter registration list" that serves as "the official voter registration list for the conduct of all elections for Federal office in the State." 52 U.S.C. § 21083(a)(1)(A)(i), (B).

45. This provision satisfies the three-part test under Blessing v. Freestone, 520 U.S. 329, 340–41 (1997), for determining whether a federal statute creates individually enforceable rights under § 1983:

   a. Intended beneficiary: Section 303 is intended to benefit individual registered voters such as Plaintiff by ensuring that a single, accurate, official statewide list properly records their voter registrations and votes. The statute's purpose is to protect individual voters' rights to have their votes accurately recorded and counted.

13

b. Not vague and amorphous: The right conferred by § 303 is concrete and specific—the right to have one's voter registration and vote recorded in a single, uniform, official, centralized statewide list that serves as the authoritative source for all federal elections. When three "official" sources report three different vote totals for the same election, this right is violated.

c. Binding obligation: Section 303 imposes a mandatory, binding obligation on states. The statute uses the mandatory term "shall" and specifies detailed requirements for the statewide list. The obligation is not discretionary.

46. Missouri is violating § 303 by failing to maintain a single, uniform, official statewide voter registration list. When the MCVR (3,022,817 voters who voted), the SOS official certified results (2,995,327 "Total Votes"), and the EAC federal report (3,126,837 "Total Voter Turnout") produce three materially different totals for the same federal election - differing by over 100,000 votes in some comparisons - there is no "single" official list as § 303 requires.

47. Plaintiff, as a registered voter whose votes in the 2022 and 2024 federal elections are part of this defective system, has an individual federal statutory right under § 303 to have Missouri maintain a single, accurate, official statewide list that allows her to verify that her vote was properly recorded and counted.

48. HAVA § 402 requires states to establish and maintain an administrative complaint procedure through which "any person" who believes a Title III violation "has occurred, is occurring, or is about to occur" may seek a remedy. 52 U.S.C. § 21112(a)(2). The § 402 administrative complaint procedure is not merely a procedural nicety—it is the principal federal mechanism Congress provided for individual voters to enforce HAVA's substantive requirements, including the § 303 mandate for a single official statewide list.

14

49. The § 402 procedure requires states to provide: (i) a written complaint process; (ii) an on-the-record hearing at the complainant's request; and (iii) a final determination within 90 days of filing (or such longer period as the parties may agree). 52 U.S.C. § 21112(a)(2)(C)–(D). This process must be available for violations that "are occurring" or "are about to occur," not just for past violations tied to a specific past election. Id. § 21112(a)(2)(B).

50. Missouri's enforcement of a rigid 30-day post-certification deadline under 15 CSR 30-12.010, as applied to Plaintiff's ongoing and prospective § 303 claim, stands as an obstacle to the accomplishment and execution of Congress's purposes and objectives under HAVA. Specifically:

   a. The 30-day post-certification bar categorically forecloses complaints alleging ongoing or prospective violations that rely on official federal data (EAC EAVS reports) published months after state certification. This makes it impossible to document § 303 violations through comparison of state and federal official data.

   b. The 30-day post-certification bar transforms HAVA § 402's "is occurring" and "is about to occur" language into a narrow, backward-looking post-election challenge window, contrary to Congress's remedial intent that the administrative process be available to prevent future violations.

   c. The 30-day bar denies complainants the on-the-record hearing and 90-day determination that § 402 expressly mandates. The state cannot condition access to a federally required process on a state-created deadline that conflicts with the federal statutory framework.

d. The 30-day bar forecloses the primary federal mechanism for individual voters to vindicate their substantive § 303 rights before the next federal election cycle, defeating the statute's prophylactic and remedial purposes.

51. The Secretary's dismissal of Plaintiff's administrative complaint under Missouri's conflicting 30-day rule is preempted under the Supremacy Clause. U.S. Const. art. VI, cl. 2. When state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," the state law is preempted. Crosby v. National Foreign Trade Council, 530 U.S. 363, 373 (2000); Hines v. Davidowitz, 312 U.S. 52, 67 (1941).

52. The Secretary's additional ground for dismissal—the false assertion that Plaintiff failed to provide the name and address of the alleged violator—independently violates federal law. The administrative complaint identifies "Missouri Secretary of State – Elections Division, 600 W. Main Street, Jefferson City, MO 65101" on page 3. For a systemic database integrity violation under § 303, the responsible official is the Secretary of State, who maintains the MCVR. Dismissing a facially compliant complaint based on a demonstrably false factual assertion denies the complainant the federal process HAVA guarantees.

53. The Secretary's refusal to accept, docket, and adjudicate Plaintiff's § 402 administrative complaint forecloses the only federal mechanism by which Plaintiff can vindicate her substantive § 303 rights. Without access to the § 402 process, Plaintiff cannot obtain:

a. An investigation and on-the-record hearing to document the § 303 violation;

b. Preservation of critical MCVR snapshots, voter history data, and audit logs necessary to analyze and remedy the discrepancies;

16

c. A final determination and remedial order requiring Missouri to reconcile its official data sources and maintain a single authoritative list going forward; or

d. Timely correction of the § 303 violation before Plaintiff votes in the August 2026 primary and November 2026 general election.

54. Acting under color of state law, Defendant deprived Plaintiff of her federally protected rights under HAVA §§ 303 and 402 by:

a. Refusing to provide the § 402 administrative complaint process through which Title III rights are enforced;

b. Applying pretextual and conflicting procedural bars—the preempted 30-day post-certification rule and the factually false "no name/address" assertion—to deny Plaintiff access to the federal process; and

c. Thereby preventing investigation, hearing, determination, and remedy of the ongoing § 303 violation before the 2026 federal election cycle.

55. Plaintiff seeks prospective declaratory and injunctive relief, not money damages. The Eleventh Amendment does not bar this claim because Plaintiff seeks only prospective relief compelling a state official to comply with federal law going forward. Ex parte Young, 209 U.S. 123 (1908). The requested relief does not seek to enjoin the Secretary from enforcing state law generally, but rather seeks to enjoin application of a state regulation (15 CSR 30-12.010) that conflicts with and is preempted by federal law as applied to Plaintiff's HAVA complaint.

17

COUNT II    42 U.S.C. § 1983 – Procedural Due Process

56. Plaintiff realleges and incorporates by reference ¶¶ 1–54.

57. To the extent HAVA § 402's administrative complaint procedure creates a federally protected entitlement separate from and in addition to the underlying § 303 substantive rights, Defendant deprived Plaintiff of that procedural entitlement without due process of law in violation of the Fourteenth Amendment.

58. A liberty or property interest protected by the Due Process Clause may arise from the Constitution itself or from state or federal statutes. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). HAVA § 402 creates a federal statutory entitlement to access an administrative complaint process that includes an on-the-record hearing upon request and a timely final determination. 52 U.S.C. § 21112(a)(2). This is a protected interest.

59. The Secretary deprived Plaintiff of this federal statutory entitlement by dismissing her properly filed, notarized administrative complaint without providing the hearing and determination that § 402 requires. The dismissal was arbitrary, irrational, and based on demonstrably false factual assertions.

60. Specifically, the Secretary's dismissal is arbitrary and violates due process because:

a. Factual misrepresentation: The dismissal asserts that Plaintiff "failed to provide the name and address of the person or persons alleged to have committed the violation," when page 3 of Plaintiff's complaint expressly identifies "Missouri Secretary of State – Elections Division, 600 W. Main Street, Jefferson City, MO 65101." Depriving a complainant of a federal statutory process based on a demonstrably false factual premise violates due process.

18

b. Impossible time-bar: The dismissal enforces a 30-day post-certification deadline that makes it impossible to file complaints about ongoing or prospective violations, and impossible to file complaints grounded in official federal data (EAC EAVS reports) that is not published until months after state certification. Applying an impossible-to-satisfy deadline to foreclose access to a federal statutory entitlement is arbitrary and irrational.

c. Conflict with federal statute: The dismissal applies a state procedural rule (15 CSR 30-12.010) in a manner that directly contradicts the federal statute's authorization of complaints for violations that "are occurring" or "are about to occur." 52 U.S.C. § 21112(a)(2)(B). Mechanically applying a conflicting state rule to defeat a federal statutory entitlement, without any consideration of the federal statute's text and purpose, is arbitrary.

61. When a state official deprives an individual of a federal statutory entitlement based on factual misrepresentations and irrational or impossible procedural rules, procedural due process is violated. Logan v. Zimmerman Brush Co., 455 U.S. 422, 429–30 (1982) (holding that state's erroneous termination of complainant's statutory right to hearing violated due process); Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541–42 (1985) (property interest in government benefit cannot be removed arbitrarily).

62. Plaintiff seeks prospective relief compelling the Secretary to provide the process HAVA § 402 requires: acceptance and docketing of the administrative complaint, an on-the-record hearing as requested, and a timely final determination.

19

COUNT III   42 U.S.C. § 1983 – First Amendment Right to Petition

63. Plaintiff realleges and incorporates by reference ¶¶ 1–61.

64. The First Amendment protects the right of citizens "to petition the Government for a redress of grievances." U.S. Const. amend. I. This right applies to petitions directed to the legislative, executive, and administrative branches. BE&K Construction Co. v. NLRB, 536 U.S. 516, 524–25 (2002).

65. HAVA § 402 establishes an administrative forum through which "any person" may petition state election officials for redress of Title III violations. 52 U.S.C. § 21112(a)(2). By filing her notarized administrative complaint on October 14, 2025, Plaintiff exercised her First Amendment right to petition the Missouri Secretary of State for investigation and remedy of an ongoing federal statutory violation.

66. The Secretary closed the administrative forum to Plaintiff by enforcing an illogical, impossible-to-satisfy time-bar (the 30-day post-certification rule) and by misstating the contents of Plaintiff's filing (falsely claiming she failed to provide the violator's name and address). These actions burden Plaintiff's right to petition for redress of a federal statutory violation.

67. The government may not deny access to an administrative forum on arbitrary or pretextual grounds. McDonald v. Smith, 472 U.S. 479, 485 (1985); California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510–13 (1972). Here, the Secretary's stated reasons for dismissal are both legally invalid (the preempted 30-day rule) and factually false (the "no name/address" claim), making the denial of access arbitrary and pretextual.

20

68. The Secretary's actions chill Plaintiff's exercise of her First Amendment right to petition. By making clear that administrative complaints will be dismissed on pretextual grounds even when facially compliant with federal law, the Secretary discourages Plaintiff and other Missouri voters from invoking the HAVA § 402 process to redress Title III violations.

69. Plaintiff seeks prospective relief compelling the Secretary to accept and adjudicate her petition (the administrative complaint) on its merits, thereby vindicating her First Amendment right to petition for redress.

IRREPARABLE HARM, BALANCE OF EQUITIES, AND PUBLIC INTEREST

70. Plaintiff will suffer irreparable harm absent injunctive relief. The harms are imminent, concrete, and not compensable through money damages:

a. Time-sensitive process: The HAVA § 402 administrative process is time-sensitive. Federal law requires a final determination within 90 days of filing (October 14, 2025). 52 U.S.C. § 21112(a)(2)(C). Continued refusal to provide this process means Plaintiff will be denied the federal mechanism for obtaining timely remedies before the 2026 federal elections.

b. Loss of critical evidence: Critical MCVR data, audit logs, voter history records, and database snapshots from the 2022 and 2024 federal elections are ephemeral. Without preservation orders, these records are at risk of being overwritten, deleted, or altered as the system is updated for the 2026 election cycle. Once lost, this evidence cannot be recreated.

c. Imminent 2026 elections: Voter registration for the August 2026 federal primary election will open in spring 2026. Plaintiff intends to vote in both the August 2026 primary and November 2026 general election. Once the 2026 election cycle begins in earnest, the opportunity

21

to remediate systemic database integrity failures from prior cycles will be effectively lost. The harm is imminent.

d. Deprivation of federal rights: The deprivation of federally protected statutory rights - here, Plaintiff's rights under HAVA §§ 303 and 402 - constitutes irreparable injury. Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); see also Gordon v. Holder, 721 F.3d 638, 653 (D.C. Cir. 2013) (deprivation of voting-related statutory rights is irreparable harm).

71. The balance of equities and the public interest favor injunctive relief. The requested relief does not disturb any certified election results, order any recount, or require the State to adopt any particular substantive policy regarding election administration. The injunction merely compels the Secretary to follow federal law by providing the administrative complaint process that HAVA mandates.

72. Requiring the Secretary to accept and adjudicate Plaintiff's administrative complaint, schedule an on-the-record hearing, and issue a timely determination imposes no significant burden on the State. These are actions the Secretary is already required to perform under federal law. The State has no legitimate interest in refusing to provide a federally mandated process.

73. By contrast, denying injunctive relief would allow the State to nullify a federal statutory right through conflicting state procedural rules and factual misrepresentations. This harms not only Plaintiff but all Missouri voters who might seek to invoke HAVA's administrative process to remedy Title III violations.

22

74. The public interest is strongly served by ensuring that state officials comply with federal election-integrity statutes and that individual voters have meaningful access to the enforcement mechanisms Congress created. Public confidence in election administration depends on transparency, accountability, and adherence to the rule of law. Allowing election officials to close the door to federal oversight through pretextual dismissals undermines that confidence and violates the constitutional principle that federal law is supreme.

75. Ordering preservation of relevant MCVR data, logs, and audit trails serves the public interest by ensuring that accurate evidence is available for the administrative proceeding and any further proceedings. Preservation of electronic records does not burden the State and is necessary to prevent spoliation of critical evidence.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Constance ("Connie") Kramer respectfully requests that this Court:

A. Issue a Temporary Restraining Order and/or Preliminary Injunction:

1. Enjoining Defendant from refusing to accept, docket, and adjudicate Plaintiff's HAVA Title III administrative complaint filed October 14, 2025;

2. Ordering Defendant to schedule an on-the-record hearing on Plaintiff's administrative complaint within fourteen (14) days of this Court's order, or such other time as the Court deems appropriate;

3. Ordering immediate preservation of all statewide and county-level MCVR database snapshots, export files, voter history records, audit logs, and audit trails related to the November

23

2022 and November 2024 federal elections, and for the 2026 election cycle, pending completion of the HAVA administrative proceeding and any further order of this Court;

B. After hearing and upon final judgment:

4. Declare that Missouri's application of the 30-day post-certification filing bar in 15 CSR 30-12.010 to Plaintiff's HAVA Title III administrative complaint alleging ongoing and prospective violations is preempted by federal law, conflicts with 52 U.S.C. § 21112, and violates the Supremacy Clause;

5. Declare that Defendant's dismissal of Plaintiff's administrative complaint based on the false assertion that Plaintiff failed to provide the name and address of the alleged violator violates Plaintiff's rights under HAVA §§ 303 and 402, the Fourteenth Amendment, and the First Amendment;

6. Permanently enjoin Defendant to accept, docket, and adjudicate Plaintiff's HAVA Title III administrative complaint on the record;

7. Permanently enjoin Defendant to provide an on-the-record hearing as requested by Plaintiff under 52 U.S.C. § 21112(a)(2)(D);

8. Permanently enjoin Defendant to issue a final determination on Plaintiff's administrative complaint within ninety (90) days of the original filing date (October 14, 2025), or within such time as the parties may agree consistent with 52 U.S.C. § 21112(a)(2)(C);

9. Award Plaintiff costs and reasonable fees under 42 U.S.C. § 1988, should Plaintiff retain counsel; and

10. Grant such other and further relief as the Court deems just and proper.

24

Respectfully submitted,

Date: 11/06/2025       _C. Kramer_

Constance ("Connie") Kramer
Plaintiff, Pro Se
572 Stratford Avenue
St. Louis, Missouri 63130
(314) 359-5828
Connie.Kramer@pm.me

## VERIFICATION

I, Constance ("Connie") Kramer, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief and that the factual allegations set forth in paragraphs 10–75 are true and correct to the best of my personal knowledge, information, and belief.

I am a registered voter in Missouri. I reside at 572 Stratford Avenue, St. Louis, Missouri 63130. I voted in the November 8, 2022 federal general election and in the November 5, 2024 federal general election. I intend to vote in the August 2026 federal primary election and the November 2026 federal general election.

On October 14, 2025, I filed a notarized HAVA Title III administrative complaint with the Missouri Secretary of State's Elections Division. My complaint identified the Missouri Secretary of State – Elections Division, 600 W. Main Street, Jefferson City, MO 65101, as the Respondent on page 3 of the complaint form. I requested an on-the-record hearing and a determination within 90 days as required by federal law.

On October 20, 2025, the Missouri Secretary of State dismissed my administrative complaint for "loss of jurisdiction," asserting that I failed to file within 30 days of certification and that I failed to provide the name and address of the alleged violator.

The official election data from the U.S. Election Assistance Commission (EAC), the Missouri Secretary of State's certified results, and the Missouri Centralized Voter Registration (MCVR) system show the discrepancies alleged in this complaint. For the November 2024 election, the EAC reports 3,126,837 total voter turnout, the Secretary of State's official results report

25

2,995,327 "Total Votes," and the MCVR records 3,022,817 voters who voted. For the November 2022 election, the EAC reports 2,304,250 total votes, the Secretary of State reports 2,069,130 total votes, and the MCVR records 2,022,368 voters who voted.

Because these three "official" sources report materially different totals for the same elections, I cannot verify that my vote in the 2022 or 2024 federal elections was accurately recorded and counted in the official results. The same defective system will affect my ability to verify my vote when I vote in the 2026 federal elections unless the violation is corrected.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. 1746.

Executed on November 6th, 2025.

_____
Constance ("Connie") Kramer

EXHIBIT LIST

The following exhibits are attached to and incorporated into this Verified Complaint:

Exhibit 1: Letter from Missouri Secretary of State dated October 20, 2025, dismissing Plaintiff's HAVA administrative complaint (1 page)

Exhibit 2: Plaintiff's notarized HAVA Title III Elections Complaint Form filed October 14, 2025, with all attachments and   (16 pages total), including:

 • Page 3 identifying Respondent as "Missouri Secretary of State – Elections Division, 600 W. Main Street, Jefferson City, MO 65101"

 • Exhibit A: EAC 2024 EAVS at-a-Glance table

 • Exhibit B: Missouri SOS 2024 Official Results page

 • Exhibit C: Missouri 2024 General Election Validity Scorecard

 • Exhibit D: MCVR 2024 data files showing snapshot deltas

26

- Exhibit E: EAC 2022 EAVS table

- Exhibit F: Missouri SOS 2022 Official Results page

- Exhibit G: Missouri 2022 General Election Validity Scorecard

- Exhibit H: Missouri 2022 General Election MCVR data

- Exhibit I: Affidavit of Daniel Hume

Exhibit 3: Missouri Code of State Regulations 15 CSR 30-12.010 (Statewide HAVA Grievance Procedure)

27