**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| CONSTANCE KRAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-04257-MDH |
| | ) | |
| DENNY HOSKINS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Denny Hoskins ("Defendant"), in his official capacity as Secretary of State of Missouri, through counsel, offers the following Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss.[1]

**A. Plaintiff does not have Article III standing, because her alleged injuries are not sufficiently concrete or particularized.**

To have standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v.*

[1] Defendant's motion to dismiss Plaintiff's Complaint inadvertently listed the incorrect name of the defendant. (Doc. 9 at 1). Plaintiff acknowledges that the moving party was correctly identified in the body of Defendant's motion to dismiss, but argues that "Defendant failed to even bring a motion to dismiss, the non-party to this case Department of Corrections did." (Doc. 10 at 4-5). Defendant clarifies that the moving party is Defendant Denny Hoskins in his official capacity as Secretary of State of Missouri, and he has sought dismissal of Plaintiff's Complaint.

*Robins*, 578 U.S. 330, 338, (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61; *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 578 U.S. at 338 (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990)).

**1. Plaintiff's alleged injury is not sufficiently concrete, because Plaintiff alleges a bare procedural violation, and any remaining allegations concern particularization rather than concreteness.**

"Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* "For that reason, [Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

Plaintiff argues that she "invoked HAVA § 402's mandatory administrative process by filing a sworn, notarized complaint requesting an on-the-record hearing and a 90-day determination," that "[t]he Secretary refused to provide that process," and that "[t]his denial of a congressionally

mandated procedural right constitutes a concrete injury." (Doc. 10 at 11). It is not sufficient for Plaintiff to allege a bare procedural violation, and Plaintiff has not sufficiently alleged any harm beyond the alleged procedural violation.

"Particularization is necessary to establish injury in fact, but it is not sufficient." *Spokeo*, 578 U.S. at 339. "An injury in fact must also be 'concrete.'" *Id*. Plaintiff argues that she suffered a "concrete deprivation of a personal statutory right" because she "was personally denied the § 402 administrative process," as "[s]he filed a specific complaint, received a dismissal letter addressed to her, and was individually refused the hearing and determination that federal law mandates." (Doc. 10 at 12). Plaintiff's allegations concern particularization, not concreteness. *See Spokeo*, 578 U.S. at 340 (rejecting the Ninth Circuit's conclusion that "[Plaintiff's] complaint allege[d] 'concrete, *de facto*' injuries" based on its observations that "[Plaintiff] 'allege[d] that [Defendant] violated *his* statutory rights, not just the statutory rights of other people,'" and that "'[Plaintiff's] personal interests in the handling of his credit information [were] *individualized rather than collective*.'").

Because Plaintiff alleges a bare procedural violation, and any remaining allegations concern particularization rather than concreteness, Plaintiff has not satisfied the injury-in-fact requirement to establish Article III standing.

**2. Plaintiff's alleged injuries are generalized, not particularized, because they would affect anyone filing a complaint through Missouri's HAVA grievance procedure,**

**anyone whose voter registrations and voting histories are recorded in the MCVR system, and anyone who intends to vote in the 2026 federal elections.**

First, Plaintiff alleges that her "injury flows from the Secretary's treatment of *her* complaint." (Doc. 10 at 12). Specifically, she alleges that "Plaintiff is the specific individual who filed the administrative complaint and was denied the statutory process," "[n]ot every Missouri voter filed a § 402 complaint," and "[n]ot every voter requested a HAVA hearing." (*Id.*). Anyone filing a complaint through Missouri's HAVA grievance procedure is subject to the same requirements. 15 CSR 30-12.010(1) provides: "[a]ny person who believes that there is a violation of any provision of Title III of [HAVA] . . . may file a complaint with the Elections Division of the Office of the Secretary of State." Complaints filed under this rule must meet the requirements provided by 15 CSR 30-12.010(2)-(4). The ability of the Elections Division to dismiss a complaint due to loss of jurisdiction would affect anyone who filed a complaint that did not meet the requirements under Missouri's HAVA grievance procedure. Thus, this is a generalized harm, not a harm particularized to Plaintiff.

Second, Plaintiff argues that "Plaintiff's voter registration and voting history are recorded in the very database system she alleges is non-compliant," and that "[t]he undisputed discrepancies among Missouri's official datasets directly affect the records containing Plaintiff's own data." (Doc. 10 at 12)

(internal citations omitted). The alleged discrepancies would affect anyone whose voter registrations and voting histories are recorded in the Missouri Centralized Voter Registration ("MCVR") system. Thus, this is a generalized harm, not a harm particularized to Plaintiff.

Third, Plaintiff argues that "Plaintiff intends to vote in the 2026 federal elections," and that "[a]bsent remediation, the same database integrity failures will affect her future ballot." (*Id.*). The alleged database integrity failures would affect anyone who intends to vote in the 2026 federal elections. Thus, this is a generalized harm, not a harm particularized to Plaintiff.

Because Plaintiff's alleged injuries could apply to anyone filing a complaint through Missouri's HAVA grievance procedure, anyone whose voter registrations and voting histories are recorded in the MCVR system, and anyone who intends to vote in the 2026 federal elections, Plaintiff has not shown that she has suffered or will suffer an injury that impacts her more than the general public. Therefore, Plaintiff has not established a particularized injury that meets the Article III standing requirements. Plaintiff has not shown that she has suffered or will suffer a concrete and particularized injury as a result of Defendant's alleged misconduct, and consequently fails to establish the required elements of Article III standing, so her Complaint should be dismissed for lack of subject-matter jurisdiction.

**B. Plaintiff has not sufficiently alleged that 52 U.S.C. § 21083(a)(1) creates an individual right enforceable under § 1983.**

"Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id.* at 286. "[T]he question whether Congress ... intended to create a private right of action [is] definitively answered in the negative' where a 'statute by its terms grants no private rights to any identifiable class.'" *Id.* at 283-84 (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576 (1979). "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.'" *Gonzaga*, 536 U.S. at 284 (citing *Cannon v. University of Chicago*, 441 U.S. 677, 692, n. 13 (1979).

Plaintiff argues that "HAVA § 303" "creates individually enforceable rights under § 1983," because:

> It requires states to maintain a "single, uniform, official, centralized" voter registration list. 52 U.S.C. § 21083(a)(l)(A)-(B). The beneficiaries are individual registered voters. The statute uses mandatory "shall" language throughout. And the requirement for a "single" list is concrete - courts can determine whether a state maintains one list or produces contradictory datasets.

(Doc. 10 at 13). Additionally, Plaintiff claims: "[a]s alleged in the Verified Complaint, § 303 (52 U.S.C. § 21083) is the Title III substantive requirement

obligating Missouri to maintain 'a single, uniform, official, centralized, interactive computerized statewide voter registration list' as the official list for all federal elections." (*Id.* at 14).

Section 21083(a)(1) seems to be the section of HAVA that Plaintiff argues creates individually enforceable rights. Unlike other sections of HAVA that contain provisions directly affecting individuals (e.g., when and how voters may be removed from voter registration lists, when voters may cast provisional ballots), Section 21083(a)(1) contains the technical requirements the State must comply with regarding its voter registration list, such as the type of information that must be stored in the list. Plaintiff does not sufficiently allege how Section 21083(a)(1) creates individual rights enforceable under § 1983. Instead, Plaintiff focuses on the State's obligation to "maintain a 'single, uniform, official, centralized' voter registration list," and makes claims about "contradictory datasets." (Doc. 10 at 13; *See also* Doc. 10 at 8-11). Plaintiff has not sufficiently alleged that she has an individual right enforceable under § 1983, so her Complaint should be dismissed for failure to state a claim.

**C. Plaintiff has not sufficiently alleged that Missouri's requirement under 15 CSR 30-12.010(3) that complaints regarding potential violations of Title III of HAVA "must be filed within thirty (30) days of the certification of the election in which the violation is alleged to have occurred" is preempted by 52 U.S.C. § 21112(a)(2)(B).**

Plaintiff argues that 52 U.S.C. § 21112(a)(2)(B) "requires complaint procedures for violations that 'has occurred, is occurring, or is about to occur,'" and "Missouri's 30-day post-certification deadline cannot apply to 'ongoing' or 'prospective' violations," because "there is no certification date from which to measure 30 days." (Doc. 10 at 15). Plaintiff notes that "[t]he EAC published its 2024 EAVS data on June 30, 2025 - seven months after Missouri's December 2024 certification," and argues that the lack of available data makes it so "[n]o voter could file a data-supported complaint within 30 days because the federal data did not exist." (*Id.* at 16). Plaintiff further argues that "Missouri's deadline does not merely regulate timing; it extinguishes the federal process before a data-based complaint can be filed," and "compliance is literally impossible for EAC-data complaints, and Missouri's deadline nullifies Congress's enforcement mechanism." (*Id.*).

No requirement under 15 CSR 30-12.010 prevented Plaintiff from filing a timely complaint. 15 CSR 30-12.010(2)-(4) provides requirements for complaints filed with the Elections Division of the Office of the Secretary of State by "[a]ny person who believes that there is a violation of any provision of Title III of [HAVA], (including a violation that has occurred, is occurring, or is about to occur)":

> (2) Any complaint filed under this rule must be written, signed, and sworn to before a notary public commissioned by the state of Missouri.

> (3) Any complaint filed under this rule must be filed within thirty (30) days of the certification of the election in which the violation is alleged to have occurred.
> (4) The complaint filed under section (1) of this rule shall state the following:
>> (A) The name and mailing address of the person or persons alleged to have committed the violation of Title III of HAVA described in the complaint;
>> (B) A description of the act or acts that the person filing the complaint believes is a violation of a provision of Title III of HAVA; and
>> (C) The nature of the injury suffered (or is about to be suffered) by the person filing the complaint.

15 CSR 30-12.010(1)-(4). Plaintiff seems to be self-imposing an additional requirement that she must file a "data-supported complaint" using EAVS data, when no such requirement exists. No requirement under 15 CSR 30-12.010 makes it necessary to have access to EAVS data prior to filing a complaint. Plaintiff has not adequately alleged how the 30-day deadline "'constrict[s]' federal civil rights remedies," makes it so "compliance with both laws is impossible," or "'stands as an obstacle' to federal purposes." (*See* Doc. 10 at 16). Therefore, Plaintiff has not sufficiently alleged that the 30-day deadline requirement under 15 CSR 30-12.010(3) is preempted by 52 U.S.C. § 21112(a)(2)(B), and her preemption claim should be dismissed.

## D. Plaintiff's procedural due process rights were not violated.

The dismissal of Plaintiff's complaint does not constitute a due process violation. Plaintiff received due process—she just failed to comply with the requirements under 15 CSR 30-12.010.

### E. Plaintiff's First Amendment rights were not violated.

The Secretary of State did not violate Plaintiff's First Amendment rights by dismissing her complaint. The dismissal of Plaintiff's complaint was not arbitrary—Plaintiff failed to meet the requirements under 15 CSR 30-12.010.

### F. Plaintiff's concerns regarding "factual disputes" do not prevent this Court from granting Defendant's motion to dismiss.

Plaintiff argues that Defendant's Motion should be denied because "[m]aterial facts are undisputed," and because "[f]actual disputes preclude dismissal." (Doc. 10 at 17-18). Taking the pleaded facts in Plaintiff's favor, Plaintiff does not have standing and fails to state a claim for the reasons discussed in Defendant's motion. None of the concerns Plaintiff raises about disputed or undisputed facts prevent this Court from granting Defendant's motion to dismiss.

## CONCLUSION

FOR THE FOREGOING REASONS, Defendant prays for an order of this Court dismissing Plaintiff's Complaint, and for all other relief the Court may deem just and appropriate.

Respectfully submitted,

**CATHERINE L. HANAWAY**
Attorney General

*/s/ Katherine McCreight*
Katherine McCreight, #76909
Assistant Attorney General
615 E. 13th Street, Suite 401
Kansas City, MO 64106
(816) 889-2255
Katherine.McCreight@ago.mo.gov
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2025, a copy of the foregoing document was electronically filed with the Court via its ECF system and thus sent to Plaintiff.

*/s/ Katherine McCreight*
Assistant Attorney General