**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| CONSTANCE KRAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-04257-MDH |
| | ) | |
| DENNY HOSKINS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendant Denny Hoskins ("Defendant"), in his official capacity as Secretary of State of Missouri, through counsel, offers the following Supplemental Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction:

**A. Plaintiff does not face a threat of irreparable harm that would require immediate relief.**

"A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." *Noodles Dev., LP v. Ninth St. Partners, LLP*, 507 F. Supp. 2d 1030, 1034 (E.D. Mo. 2007). To demonstrate threat of irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996)).

Plaintiff has not sufficiently demonstrated that she faces a threat of irreparable harm without a temporary restraining order or preliminary injunction. In the Supplemental Memorandum Plaintiff filed prior to the hearing on her Motion for TRO and Preliminary Injunction, Plaintiff clarified that "Plaintiff asks only that Defendant be enjoined from enforcing a state administrative deadline and denial rationale in a manner that prevents access to the federally required § 402 complaint process, including the on-the-record hearing Congress mandated upon request." (Doc. 16-2 at ¶ 8). Plaintiff claims, in part, that she will suffer irreparable harm absent immediate relief because . . . "[c]ontinued denial of this process eliminates Plaintiff's ability to obtain timely remedies before the 2026 federal election cycle." (Doc. 2 at 2).

Plaintiff has not sufficiently shown that she faces a threat of irreparable harm without immediate intervention. There is no election occurring in the immediate future—the 2026 federal election does not occur until November 3, 2026.

## B. Plaintiff's complaint was not appropriately raised through the HAVA grievance process, because she does not allege a Title III violation.

### 1. The HAVA administrative complaint procedures are intended to remedy grievances arising from violations of Title III.

HAVA requires States to establish State-based administrative complaint procedures to remedy grievances arising from Title III violations. "Under the procedures, any person who believes that there is a *violation of any provision of title III* (including a violation which has occurred, is occurring, or is about to occur) may file a complaint." (emphasis added) HAVA § 402(B); 52 U.S.C. § 21112(a)(2)(B).

### 2. The violation Plaintiff alleges is not a Title III violation.

Plaintiff indicated in the HAVA Complaint she filed with the Secretary of State that her Complaint was a "Single Issue Title III Complaint: Failure to Maintain a Single, Uniform, Official, Centralized Statewide Voter Registration List." (Doc. 1-2 at 3). Plaintiff specifically cited to HAVA § 303(a)(1)(A)-(B) and 52 U.S.C. § 21083(a)(1)(A)-(B) as the provision of Title III that was allegedly violated. (*Id.*).

HAVA § 303(a) requires State to "implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State . . ." 52 U.S.C. § 21083(a)(1)(A). Subsections (i)-(viii) provide specific requirements for the computerized statewide voter registration list:

> **(i)** The computerized list shall serve as the single system for storing and managing the official list of registered voters throughout the State.
> **(ii)** The computerized list contains the name and registration information of every legally registered voter in the State.
> **(iii)** Under the computerized list, a unique identifier is assigned to each legally registered voter in the State.
> **(iv)** The computerized list shall be coordinated with other agency databases within the State.
> **(v)** Any election official in the State, including any local election official, may obtain immediate electronic access to the information contained in the computerized list.
> **(vi)** All voter registration information obtained by any local election official in the State shall be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local official.
> **(vii)** The chief State election official shall provide such support as may be required so that local election officials are able to enter information as described in clause (vi).

> **(viii)** The computerized list shall serve as the official voter registration list for the conduct of all elections for Federal office in the State.

Missouri's statewide voter registration database is established in Section 115.158 RSMo., which requires the secretary of state to "implement a centralized, interactive computerized statewide voter registration list," known as the Missouri Voter Registration ("MCVR") System. § 115.158.1 RSMo. Sections 115.158.1-5 provide specific requirements for the MCVR System that mirror the language of the requirements provided by 52 U.S.C. § 21083(a)(1)(A)(i)-(viii).

None of the requirements provided by HAVA § 303(a)(1) require the State to record voter history in the voter registration system. However, Missouri's statute establishing the MCVR System includes a provision that allows the State to use the MCVR for purposes that may involve recording voter history in the system: "In addition to using the system for voter registration, the election authorities and secretary of state *may* use the system for the collection and dissemination of election results and other pertinent information. . ." § 115.158.6 RSMo. (emphasis added). This provision of Section 115.158 extends beyond the scope of the requirements for the statewide voter registration database provided by HAVA § 303(a)(1). Sections 115.158.1-5 set forth requirements to first ensure that the MCVR System meets the voter registration database requirements under HAVA § 303(a)(1), and Section 115.158.6 allows the State to use the voter registration database for additional purposes.

Although the State can use the MCVR System for the collection and dissemination of election results and other pertinent information, it is not required

to under HAVA § 303(a)(1). As such, any issues related to voter history being recorded in the MCVR System would not be violations of HAVA § 303(a)(1). Thus, Plaintiff's concerns about the MCVR System—specifically relating to voter history that may be recorded in the System—are not appropriately addressed through the HAVA grievance process.

**3. Alternative remedies may exist that would allow Plaintiff to address her concerns related to voter history.**

To the extent that Plaintiff has concerns related to her voter history, she would likely need to file a complaint with the elections authority who oversees the conduction of elections in her county.

**C. Plaintiff did not receive a hearing, because her complaint was dismissed due to her failure to meet the procedural requirements.**

Plaintiff did not receive a hearing, because her complaint was dismissed due to loss of jurisdiction, as Plaintiff failed to meet the procedural requirements provided by 15 CSR 30-12.010. (*See* Doc. 1-1).

**1. Plaintiff failed to file her HAVA Complaint within thirty days of the certification of the elections listed on her HAVA Complaint Form.**

Missouri requires HAVA Complaints to be filed "within thirty (30) days of the certification of the election in which the violation is alleged to have occurred." 15 CSR 30-12.010(3). *See also* § 115.219.2(2) RSMo. On the HAVA Complaint Form Plaintiff filed with the Secretary of State's Elections Division, Plaintiff listed the 2022 and 2024 elections as the elections that her complaint pertains to. (Doc. 1-2 at 1). Plaintiff did not file her HAVA Complaint until October 2025.

Plaintiff has raised concerns relating to voter history information that may be recorded in the MCVR, and seems to argue that she cannot determine whether a Title III violation exists in time to file a HAVA Complaint within 30 days of the certification of the election, because county election authorities have three months after the election to forward voter history data to the MCVR System. Section 115.157.2 RSMo. provides:

> All election authorities shall enter voter history in their computerized registration systems and shall, not more than three months after the election, forward such data to the Missouri voter registration system established in section 115.158. In addition, election authorities shall forward registration and other data in a manner prescribed by the secretary of state to comply with the Help America Vote Act of 2002.

Voter history may be stored in the MCVR System, as Section 115.158.6 RSMo. allows the State to use the MCVR System for the collection and dissemination of election results and other pertinent information. However, voter history is not required to be included in the State's voter registration database to comply with the requirements set forth by HAVA § 303(a)(1). As such, access to this voter history information would not be required to file a HAVA Complaint within 30 days of an election certification date.

**2. Plaintiff failed to state the name of the person or persons alleged to have committed the violation of Title III of HAVA.**

Missouri requires HAVA Complaints to state the "name and address of the person or persons alleged to have committed the violation of Title III of HAVA described in the complaint . . ." 15 CSR 30-12.010(4)(A). *See also* § 115.219.2(2)(a). In her HAVA Complaint, Plaintiff named "Missouri Secretary of State - Elections Division" as the "Respondent" to her HAVA Complaint.

First, it was not entirely clear that Plaintiff intended to name the Secretary of State as the person alleged to have committed the violation of Title III of HAVA, because the Elections Division is responsible for responding to HAVA Complaints.

Second, the alleged violations Plaintiff seeks to address concern Missouri's voter registration system. In theory, Plaintiff should have named the Director of Election Integrity within the Secretary of State's Office, who is responsible for the maintenance of the MCVR System.[1] On the HAVA Complaint Form, Plaintiff listed the 2022 and 2024 elections as the elections that her complaint pertains to. (Doc. 1-2 at 1). At the time of the 2022 and 2024 elections, Chrissy Peters would have been the Director of Election Integrity. Plaintiff filed her HAVA Complaint with the Elections Division of the Secretary of State's Office in October of 2025. The Director of Elections Integrity at that time would have been Nick La Strata, who is also the current Director of Elections Integrity.

## D. Plaintiff does not have Article III standing.

### 1. To the extent that Plaintiff's alleged injury relates to being denied a hearing, Plaintiff does not have standing.

Plaintiff's HAVA Complaint was dismissed due to loss of jurisdiction because of her failure to comply with the procedural requirements. These procedural requirements apply to anyone filing a HAVA Complaint. Consequently, Plaintiff's alleged injury is not particularized, in that it does not "affect the plaintiff in a

[1] Defendant notes that Plaintiff's concerns with the MCVR System relate to voter history, which is not required to be included in the State's voter registration database to comply with HAVA § 303(a)(1). As such, Plaintiff's concerns do not constitute a Title III violation, and consequently would not be appropriately raised through the HAVA grievance process.

personal and individual way." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (citations omitted).

### 2. To the extent that Plaintiff's alleged injury relates to Missouri's 30-day post-election certification filing deadline, Plaintiff does not have standing.

To the extent that Plaintiff's alleged injury relates to Missouri's 30-day post-election certification filing deadline, Plaintiff does not have standing, because she alleges a bare procedural violation. *See Spokeo,* 578 U.S. at 341 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)).

## CONCLUSION

FOR THE FOREGOING REASONS, Defendant prays for an order of this Court denying Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, and for all other relief the Court may deem just and appropriate.

Respectfully submitted,

**CATHERINE L. HANAWAY**
Attorney General

*/s/ Katherine McCreight*
Katherine McCreight, #76909
Assistant Attorney General
615 E. 13th Street, Suite 401
Kansas City, MO 64106
(816) 889-2255
Katherine.McCreight@ago.mo.gov
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2025, a copy of the foregoing document was electronically filed with the Court via its ECF system and thus sent to Plaintiff.

*/s/ Katherine McCreight*
Assistant Attorney General