**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

CONSTANCE KRAMER,

Plaintiff,

v. **Case No. 2:25-cv-04257-MDH**

DENNY HOSKINS, in his official capacity
as Secretary of State of Missouri,
Office of the Secretary of State,
600 W. Main Street,
Jefferson City, Missouri 65101

Defendant.

## PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## I. NATURE OF THE ACTION

1. Plaintiff brings this civil rights action under 42 U.S.C. § 1983 and the Fourteenth and First Amendments for prospective declaratory and injunctive relief against a state official acting under color of state regulation and official practice.

2. This case is not about election outcomes, candidates, or whether Plaintiff's individual ballot was counted. The injury alleged is the completed denial of the congressionally mandated administrative adjudicatory process required by HAVA Section 402, codified at 52 U.S.C. § 21112.

3. Congress required each State, as a condition of receiving HAVA funds, to establish and maintain state-based administrative complaint procedures under which any person may file a

complaint alleging a Title III violation that has occurred, is occurring, or is about to occur, and to receive, upon request, a hearing on the record and a written determination within 90 days. 52 U.S.C. § 21112(a)(1)-(3). Missouri accepted tens of millions of dollars in federal HAVA funds conditioned on establishing and maintaining this process. Missouri then promulgated a state regulation, 15 CSR 30-12.010, that purports to provide the required complaint procedure.

4. Plaintiff filed a sworn and notarized HAVA Section 402 complaint and requested the on-the-record hearing and determination. The Secretary dismissed the complaint at intake on two grounds: (a) a factually false assertion that Plaintiff failed to provide the name and address of the alleged violator, and (b) a rigid 30-day post-certification deadline that, as applied, forecloses the federally required process for ongoing or prospective violations and operates as an obstacle to Congress's enforcement scheme.

5. Plaintiff seeks narrow, process-based relief: restoration of access to the federally required Section 402 procedure for Plaintiff's filed complaint, and prospective relief preventing the State from extinguishing that federal process at intake using factually false grounds or an as-applied deadline structure that nullifies complaints for violations that are occurring or about to occur.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983, the Fourteenth Amendment, and the First Amendment. Declaratory relief is authorized under 28 U.S.C. §§ 2201-2202.

7. This Court has authority to award prospective declaratory and injunctive relief against Defendant in his official capacity to enjoin ongoing violations of federal law. *Ex parte Young*,

209 U.S. 123 (1908). The Eleventh Amendment does not bar this action because Plaintiff seeks only prospective relief compelling a state official to comply with federal law.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant performs official duties in Missouri and the acts and omissions giving rise to these claims occurred in this District.

## III. PARTIES

9. Plaintiff Constance Kramer is a citizen of the United States, a resident of the State of Missouri, a registered voter and qualified elector in the State of Missouri. Plaintiff resides in St. Louis, Missouri. Plaintiff voted in the November 2022 and November 2024 federal general elections and intends to vote in the August 2026 federal primary and November 2026 federal general elections. As a Missouri taxpayer, Plaintiff has a direct interest in the proper expenditure of the tens of millions of dollars in federal HAVA funds Missouri has accepted, conditioned on providing the administrative complaint process at issue in this action. On October 14, 2025, Plaintiff filed a sworn, notarized HAVA Title III administrative complaint with the Missouri Secretary of State's Elections Division, requesting a hearing on the record and a determination within 90 days. The Secretary denied that process on October 20, 2025.

10. Defendant Denny Hoskins is the Secretary of State of Missouri. Plaintiff sues Defendant solely in his official capacity for prospective declaratory and injunctive relief. Defendant, through the Elections Division, administers Missouri's HAVA grievance procedure published at 15 CSR 30-12.010 and issued the intake dismissal of Plaintiff's HAVA complaint.

## IV. STANDING AND INJURY

11. Plaintiff has standing because Plaintiff suffered an injury in fact that is concrete, particularized, and completed: Plaintiff personally invoked the federally mandated Section 402 adjudicatory process by filing a sworn complaint and requesting a hearing and determination, and the State denied that process at intake. The denial letter was addressed to Plaintiff individually and terminated the process. Not every Missouri voter filed a Section 402 complaint. Not every Missouri voter received a denial letter. Plaintiff did.

12. The denial of a statutorily required adjudicatory process is not a "bare procedural violation, divorced from any concrete harm." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). It is the deprivation of the only congressionally prescribed forum for adjudicating a Title III complaint, including the on-the-record hearing and 90-day written determination Congress mandated. The right to access a statutorily created adjudicatory process is a species of property protected by the Due Process Clause, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982), with deep roots in the Anglo-American legal tradition. See *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) ("The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury").

13. Plaintiff's injury is fairly traceable to Defendant's application of Missouri's published grievance regulation and intake practice to dismiss Plaintiff's complaint, and is redressable by an order compelling acceptance and processing of Plaintiff's complaint and prohibiting unlawful intake dismissal grounds that extinguish the federal process.

14. A harm may be widely shared and still support Article III standing where Congress has authorized its vindication and the injury is concrete. *FEC v. Akins*, 524 U.S. 11, 24-25 (1998). This action is not a generalized grievance about election administration. Plaintiff does

not ask this Court to tabulate votes, rerun elections, or adjudicate election outcomes. Plaintiff challenges the denial of the federally required adjudicatory forum after Plaintiff personally invoked it and was personally refused.

## V. STATUTORY AND REGULATORY FRAMEWORK

### A. HAVA: Federal Funding and Federal Obligations

15. Congress enacted the Help America Vote Act of 2002, Pub. L. No. 107-252, codified at 52 U.S.C. §§ 20901-21145, to establish uniform requirements for the administration of federal elections. Title III of HAVA imposes substantive requirements on states, including the requirement that each State "shall" implement and maintain "a single, uniform, official, centralized, interactive computerized statewide voter registration list" that shall serve as "the official voter registration list for the conduct of all elections for Federal office in the State." 52 U.S.C. § 21083(a)(1)(A)(i), (B).

16. Section 303, codified at 52 U.S.C. § 21083, is located within Title III of HAVA and is therefore a "provision of title III" subject to the Section 402 complaint procedure. 52 U.S.C. § 21112(a)(2)(B).

17. Section 402 of HAVA (52 U.S.C. § 21112) establishes the enforcement mechanism for Title III. Congress mandated that "[e]ach State shall establish and maintain State-based administrative complaint procedures" meeting specific minimum requirements. 52 U.S.C. § 21112(a)(1). Those procedures must provide that any person who believes there is a Title III violation, including a violation that has occurred, is occurring, or is about to occur, may file a complaint. 52 U.S.C. § 21112(a)(2)(B). Upon request, the procedures must provide a hearing on the record. 52 U.S.C. § 21112(a)(2)(E). The State must make a written determination within 90 days. 52 U.S.C. § 21112(a)(3). Congress used the word "shall" throughout Section 402, creating

binding obligations on the states and corresponding entitlements for persons who invoke the process.

**B. Missouri Accepted Federal HAVA Funds Subject to These Conditions**

18. Missouri has accepted and continues to accept substantial federal HAVA funds conditioned on establishing and maintaining the Section 402 administrative complaint procedure. Since 2018, Missouri has received millions of dollars in HAVA Election Security grants alone, including $27.4 million audited through 2022. See Audit of the Help America Vote Act Grants Awarded to the State of Missouri, EAC Office of Inspector General Report No. G22MO0023-23-08 (Aug. 2024). Missouri also received earlier Title I and Title II HAVA payments. As a condition of receiving these funds, Missouri certified to the federal Election Assistance Commission that it was in compliance with HAVA's requirements, including the Section 402 administrative complaint procedures.

19. Having voluntarily accepted federal funds conditioned on providing this administrative process, Missouri assumed a binding obligation under the Spending Clause. See *South Dakota v. Dole*, 483 U.S. 203, 206-07 (1987). Missouri cannot accept millions in federal HAVA funds with one hand while using the other to deny Missouri citizens the very administrative process those funds are conditioned upon providing.

**C. Missouri Created a HAVA Complaint Process but Its Rule Contains a Structural Contradiction**

20. Missouri promulgated 15 CSR 30-12.010, titled "Statewide HAVA Grievance Procedure." Section (1) of that rule provides:

> "Any person who believes that there is a violation of any provision of Title III of [HAVA], (including a violation that has occurred, is occurring, or is about to occur) may file a complaint with the Elections Division of the Office of the Secretary of State."

21. This tracks the federal statute's tri-part temporal coverage: violations that have occurred, are occurring, or are about to occur.

22. However, Section (3) of the same rule provides: "Any complaint filed under this rule must be filed within thirty (30) days of the certification of the election in which the violation is alleged to have occurred." 15 CSR 30-12.010(3).

23. These two provisions contain a structural contradiction that cannot be harmonized as applied to "is occurring" or "is about to occur" complaints. If the violation "is about to occur," there may be no election yet and therefore no certification date from which to measure thirty days. If the violation "is occurring," the rule's own language contemplates an ongoing condition, yet the deadline is rigidly anchored to a past certification date. Missouri's rule, on its face, accepts the full scope of federal complaints, but then imposes a deadline that extinguishes two of the three categories Congress authorized.

24. The rule also provides that the complaint shall include "[t]he name and mailing address of the person or persons alleged to have committed the violation of Title III of HAVA described in the complaint." 15 CSR 30-12.010(4)(A). And the rule provides: "At the request of the complainant, there shall be a hearing on the record" and that "[t]he hearing shall be held within ten (10) days of receipt of the complaint." 15 CSR 30-12.010(8).

## VI. FACTUAL ALLEGATIONS

### A. The Underlying Title III Violation

25. Plaintiff's administrative complaint alleged that Missouri is not maintaining a single, uniform, official, centralized voter registration list as required by HAVA § 303, 52 U.S.C. § 21083(a)(1)(A)-(B). The complaint identified irreconcilable discrepancies among three

authoritative official data sources that each report different totals for voter turnout in the same federal elections:

(a) The U.S. Election Assistance Commission ("EAC") Election Administration and Voting Survey ("EAVS"), compiled from data Missouri itself submits to the federal government;

(b) The Missouri Secretary of State's officially certified election results webpage; and

(c) The Missouri Centralized Voter Registration ("MCVR") database, which records the number of voters with voter history entries for each election.

26. The discrepancies among these three sources go to the core requirement of § 303(a)(1)(B): that Missouri's computerized statewide voter registration list "shall serve as the official voter registration list for the conduct of all elections for Federal office in the State." 52 U.S.C. § 21083(a)(1)(A)(viii). When three official channels maintained or reported by Missouri itself produce totals differing by over 100,000 votes for the same federal election, the State is not operating from a "single" official list as Section 303 requires. Missouri enacted RSMo § 115.158 specifically to comply with HAVA Section 303, making the MCVR system and its function as the single authoritative list a Title III compliance matter. The complaint does not challenge optional record-keeping. It challenges the absence of a single, reconcilable official list for federal elections.

27. For the November 2024 federal general election, these three official sources report three different totals: EAC total turnout: 3,126,837; SOS officially certified "Total Votes": 2,995,327; and MCVR voters with 2024 voter history: 3,022,817. The differences range from 27,490 to 131,510 votes.

28. For the November 2022 federal general election, the same pattern appears: EAC total turnout: 2,304,250; SOS officially certified "Total Votes": 2,069,138; and MCVR voters with 2022 voter history: 2,022,368. The differences range from 46,770 to 281,882 votes.

29. These figures were compiled from official copies of the MCVR database provided by the Missouri Secretary of State's office, as attested in the sworn Affidavit of Daniel Hume, an engineer with expertise in computers and data analysis. See Exhibit A. When three official channels purportedly derived from the same single statewide list produce totals that differ by over 100,000 votes for the same federal election, the State is not operating from one authoritative list as HAVA Section 303 requires.

30. Plaintiff's complaint does not allege merely that "voter history" is improperly recorded. It alleges that Missouri's three official data sources, each derived from or reporting on the same statewide voter registration system, produce different totals for the same federal elections, differing by over 100,000 votes. When the list that "shall serve as the official voter registration list for the conduct of all elections for Federal office in the State," 52 U.S.C. § 21083(a)(1)(A)(viii), cannot be reconciled with the State's own certified results or its own federal EAC submission, the State is not maintaining "a single" official list. This is a § 303(a)(1) violation, not a dispute about optional data fields.

**B. Plaintiff Invoked the HAVA Section 402 Process**

31. On October 14, 2025, Plaintiff filed a sworn, notarized HAVA Title III administrative complaint with the Elections Division of the Missouri Secretary of State's office. The complaint was written, signed, and sworn to before a notary public of the State of Missouri, as required by 15 CSR 30-12.010(2). See Doc. 1-2.

32. Plaintiff's complaint expressly identified the Respondent as: "Missouri Secretary of State – Elections Division, 600 W. Main Street, Jefferson City, MO 65101." Doc. 1-2 at 3. This provided both the name and the mailing address of the entity responsible for maintaining the statewide voter registration list. It is a matter of public knowledge that Denny Hoskins is the Secretary of State of Missouri. He is named as the Defendant here in his official capacity.

33. Missouri's grievance rule, 15 CSR 30-12.010(4)(A), requires the complaint to state "the name and mailing address of the person or persons alleged to have committed the violation." The rule does not require identification of a specific individual employee, a staff title, or an internal division director. It says "person or persons." The Secretary of State is the chief state election official responsible under both HAVA and RSMo § 115.158 for maintaining the statewide voter registration list. Naming the Secretary of State's Elections Division with its mailing address satisfies the rule's text.

34. Plaintiff's complaint described with specificity the act constituting the alleged Title III violation, included the concrete statewide figures, cited the relevant statutes, and attached supporting exhibits including EAC data, SOS official results pages, MCVR analysis, and the Hume Affidavit. See Doc. 1-2 at 3-10 and Exhibits A through I.

35. Plaintiff requested a HAVA hearing, stating: "I request a HAVA hearing and completion within 90 days as provided by 52 U.S.C. § 21112(a)(2) and Missouri's HAVA rule." Doc. 1-2 at 1. This request triggered the Secretary's mandatory obligation under federal law (52 U.S.C. § 21112(a)(2)(E): "At the request of the complainant, there shall be a hearing on the record") and Missouri's own rule (15 CSR 30-12.010(8)).

36. Plaintiff's complaint alleged the Section 303 violation is ongoing and prospective, that is, "is occurring" and "is about to occur" in the 2026 federal election cycle. Plaintiff

expressly objected to Missouri's thirty-day post-certification filing deadline because the official federal EAC data for the 2024 election was not published until June 30, 2025, seven months after Missouri's December 2024 certification, making the thirty-day deadline impossible to satisfy for a data-grounded complaint. Missouri law separately allows counties up to three months to transmit voter history data to the MCVR. See RSMo 115.157(2). No voter could file a data-supported complaint within thirty days because the official data necessary to demonstrate the violation did not exist during that window.

**C. Missouri Denied Plaintiff the HAVA Process and Hearing**

37. On October 20, 2025, the Secretary of State's Elections Division issued a letter dismissing Plaintiff's complaint "due to loss of jurisdiction." Doc. 1-1.

38. The denial letter stated two grounds: (a) Plaintiff's complaint was "filed outside of the thirty days certification requirement in which the violation was alleged to have occurred," citing 15 CSR 30-12.010; and (b) Plaintiff had "not provided the name and address of the person or persons alleged to have committed the violation of Title III of HAVA described in [the] complaint."

39. The second ground is demonstrably false on the face of Plaintiff's filing. Plaintiff identified "Missouri Secretary of State – Elections Division, 600 W. Main Street, Jefferson City, MO 65101" as the Respondent on page 3. Doc. 1-2 at 3. The dismissal on this factually incorrect ground deprived Plaintiff of the administrative process based on a false premise Plaintiff had no opportunity to correct before the process was terminated. Plaintiff has changed the title of this First Amended Complaint to include the name Denny Hoskins.

40. Defendant's subsequent litigation filings have retreated from the dismissal letter's categorical assertion. In Document 23, filed February 11, 2026, Defendant conceded that

Plaintiff did name "Missouri Secretary of State - Elections Division" as the Respondent but argued "it was not entirely clear" that Plaintiff intended to name the Secretary of State as the alleged violator. This post hoc recharacterization was never stated in the dismissal letter, was not part of the administrative record, and Plaintiff was given no opportunity to cure or clarify before the process was terminated. The shifting rationale confirms the arbitrary nature of the dismissal under Logan.

41. Nothing in 15 CSR 30-12.010(4)(A) requires the complainant to identify a specific individual employee by job title. The rule requires "the name and mailing address of the person or persons alleged to have committed the violation." The Secretary of State, acting through the Elections Division, is the chief state election official responsible for maintaining the statewide voter registration list under both HAVA and RSMo Section 115.158. To the extent Defendant now contends Plaintiff should have named a particular staff-level employee, that requirement appears nowhere in the rule's text, was not stated in the dismissal letter, and Plaintiff was given no opportunity to cure before the process was terminated.

42. The first ground applies a state deadline that conflicts with the federal statute's express authorization of complaints for violations that "has occurred, is occurring, or is about to occur." 52 U.S.C. § 21112(a)(2)(B). As applied to Plaintiff's complaint alleging ongoing and prospective violations evidenced by official data published months after certification, the state deadline extinguished the federally mandated process before a data-based complaint could be filed.

43. The denial letter terminated the administrative process at intake. The Secretary did not provide Plaintiff with any hearing. The Secretary did not provide Plaintiff with any opportunity to respond to the Secretary's factual assertions before terminating the process. The

Secretary did not provide Plaintiff with any determination on the merits. The Secretary did not provide a written final determination within 90 days, as required by 52 U.S.C. § 21112(a)(3). The entire congressionally mandated process was denied.

44. Defendant's own counsel in this litigation subsequently captioned the Motion to Dismiss (Doc. 9) as "Defendant Missouri Department of Corrections' Motion to Dismiss Plaintiff's Complaint," misidentifying the Secretary of State as the Department of Corrections. If Defendant's counsel could not correctly identify their own client, the Secretary's dismissal of Plaintiff's complaint for allegedly failing to identify the respondent is all the more arbitrary.

45. Missouri continues to accept federal HAVA funds while refusing to provide the federally required complaint process. HAVA expressly makes the existence and maintenance of compliant Section 402 procedures a condition of receiving federal funds. 52 U.S.C. § 21112(a)(1).

## VII. CLAIMS FOR RELIEF

### COUNT I

### 42 U.S.C. § 1983 – Procedural Due Process (Fourteenth Amendment)

46. Plaintiff realleges and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

47. HAVA Section 402 contains particularized standards and mandatory language that create an individual entitlement to the state-based adjudicatory process Congress required. The Eighth Circuit holds that a statute creates a protected property interest where it: (1) contains particularized substantive standards or criteria that guide the decisionmaker; and (2) uses mandatory language requiring the decisionmaker to act in a certain way, thus limiting the official's discretion. *Craft v. Wipf*, 836 F.2d 412, 417 (8th Cir. 1987).

48. HAVA Section 402 satisfies both prongs. First, the statute contains particularized standards: it specifies who may file ("any person who believes" there is a Title III violation), what triggers the process (violations that "has occurred, is occurring, or is about to occur"), and what the State must provide (a hearing on the record, a written determination within 90 days). Second, the statute uses mandatory language throughout: states "shall" establish and maintain procedures; the complainant "shall" receive a hearing on the record upon request; the state "shall" make a final determination within 90 days. Missouri's own rule uses identically mandatory language. 15 CSR 30-12.010(8).

49. Under *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), the Supreme Court unanimously held that a complainant's right to use a state agency's adjudicatory procedures is "a species of property protected by the Due Process Clause." *Id.* at 428. The Court held that "[t]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." *Id.* at 434. When "it is the state system itself that destroys a complainant's property interest, by operation of law," the deprivation cannot be cured by post-deprivation remedies. *Id.* at 436. The Court further warned that a system or procedure that deprives persons of their claims "presents an unjustifiably high risk that meritorious claims will be terminated." *Id.* at 435.

50. The Eighth Circuit has adopted this framework. When an "established state procedure" causes the deprivation, as opposed to a random, unauthorized act, "an adequate post deprivation remedy is of no consequence" and the Court examines the adequacy of the process itself. *Clark v. Kansas City Mo. Sch. Dist.*, 375 F.3d 698, 703 (8th Cir. 2004) (citing *Logan*, 455 U.S. at 435-36). See also *Heinen v. Brewer*, 171 F.3d 612, 613 (8th Cir. 1999) (hearing required before final deprivation of protected property interest).

51. The parallels between *Logan* and this case are direct:

(a) **Statutory entitlement.** In *Logan*, Illinois law created the right to use the FEPA adjudicatory process. Here, Congress created the right to use the HAVA Section 402 process: "any person who believes" a Title III violation exists "may file a complaint" and receive a hearing and determination. 52 U.S.C. § 21112(a)(2). Missouri codified this entitlement in 15 CSR 30-12.010.

(b) **Procedural deadline destroys entitlement.** In *Logan*, a 120-day scheduling deadline extinguished the complaint. Here, Missouri's 30-day post-certification deadline extinguishes complaints for violations evidenced by later-created official state data.

(c) **Complainant has no control.** In *Logan*, the agency's failure to schedule a timely hearing was "beyond Logan's . . . control." 455 U.S. at 435. Here, Plaintiff cannot control when the EAC publishes Missouri's EAVS data (published June 30, 2025, seven months after certification). Plaintiff cannot control when Missouri counties transmit voter history data to the MCVR under RSMo 115.157(2) (up to three months post-election). And Plaintiff had no opportunity to correct or contest the Secretary's false factual assertion before the process was terminated at intake. The circumstances that made compliance with the 30-day deadline impossible, and the false factual ground for dismissal, were entirely beyond Plaintiff's control.

(d) **State system destroys entitlement by operation of law.** In *Logan*, "it is the state system itself that destroys a complainant's property interest." 455 U.S. at 436. Here, Missouri's published regulation 15 CSR 30-12.010(3) destroyed

Plaintiff's Section 402 entitlement by operation of law before the State's own official evidence existed.

(e) **No alternative remedy.** In *Logan*, the deprivation was "final." 455 U.S. at 434. Here, Missouri's dismissal forecloses the entire HAVA Section 402 process. The denial letter offers no alternative procedure, no opportunity to refile, and no path to the hearing and determination Congress required.

52. *Logan* warned that a system that deprives persons of their claims "presents an unjustifiably high risk that meritorious claims will be terminated." 455 U.S. at 435. That is precisely what occurred here. The Secretary dismissed Plaintiff's complaint in part on the assertion that Plaintiff "failed to provide the name and address of the person or persons alleged to have committed the violation." That assertion is demonstrably false on the face of Plaintiff's sworn filing, which identifies "Missouri Secretary of State – Elections Division, 600 W. Main Street, Jefferson City, MO 65101" as the Respondent on page 3. Doc. 1-2 at 3. When a state official destroys a statutory entitlement based on a factually false assertion, one contradicted by the face of the complainant's own filing, due process is violated. This is the kind of arbitrary governmental action that *Logan* holds the Due Process Clause exists to prevent.

53. The deprivation here occurred by operation of Missouri's published regulation, 15 CSR 30-12.010(3), applied as written. This is the paradigmatic *Logan* scenario: the state system itself destroyed Plaintiff's entitlement to the Section 402 process by operation of law, without providing any hearing. Federal constitutional minimums control. These minimum requirements are a matter of federal law, and they "are not diminished by the fact that the State may have specified its own procedures that it may deem adequate." *Vitek v. Jones*, 445 U.S. 480, 491

(1980). Moreover, "'[p]roperty' cannot be defined by the procedures provided for its deprivation." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

54. Defendant, acting under color of Missouri's published grievance regulation and established intake practice, finally destroyed Plaintiff's entitlement to the Section 402 process at intake, without providing any hearing on the record, without an opportunity to respond, and without any merits determination. The intake dismissal relied in part on a factually false ground contradicted by the face of Plaintiff's sworn complaint, and in part on an as-applied deadline that operates to foreclose Congress's required process for violations that are occurring or about to occur. At a minimum, the process due included acceptance of Plaintiff's complaint for processing, the opportunity to be heard through the requested on-the-record hearing required by 52 U.S.C. § 21112(a)(2)(E), and a written determination issued within the timeframe Congress mandated. The State provided none of these procedures before finally terminating Plaintiff's entitlement at intake.

55. By finally terminating Plaintiff's access to the Section 402 adjudicatory process without constitutionally sufficient process, Defendant deprived Plaintiff of property without due process of law in violation of the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.

**COUNT II**

**42 U.S.C. § 1983 – Supremacy Clause / Preemption (As-Applied)**

56. Plaintiff realleges and incorporates by reference paragraphs 1 through 49 as if fully set forth herein.

57. Under the Supremacy Clause, state law must yield where it conflicts with federal statutory requirements or stands as an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress. U.S. Const. art. VI, cl. 2; *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

58. Congress required State complaint procedures that accept complaints for Title III violations that have occurred, are occurring, or are about to occur, and that provide a hearing on the record upon request. 52 U.S.C. § 21112(a)(2)(B), (E). Congress used three distinct temporal categories, expressing its clear intent that the administrative process be available for ongoing and prospective violations, not only past events.

59. As applied to Plaintiff's complaint, Missouri's thirty-day post-certification cutoff and intake dismissal practice stand as an obstacle to Congress's enforcement mechanism because:

(a) The deadline categorically bars complaints alleging ongoing or prospective Title III violations evidenced by official data not available within thirty days of certification. The EAC published Missouri's 2024 EAVS data on June 30, 2025, seven months after Missouri's December 2024 certification. Missouri counties have up to three months to transmit voter history data under RSMo 115.157(2). No voter could file a data-supported complaint within thirty days because the official data did not exist.

(b) The deadline transforms Section 402's tri-part standard ("has occurred, is occurring, or is about to occur") into a single retrospective category pegged to a past certification date, contrary to Congress's express remedial intent.

(c) The intake dismissal practice forecloses the hearing and 90-day determination that Section 402 mandates for complainants who invoke the process.

(d) The deadline renders Section 402 unavailable for the category of systemic, ongoing violations that most urgently require administrative investigation before the next federal election cycle.

60. The Secretary's own denial letter highlights the contradiction by quoting the rule's coverage for violations that "has occurred, is occurring, or is about to occur" while simultaneously enforcing a deadline pegged to a past certification date.

61. The Secretary's false assertion that Plaintiff failed to identify the alleged violator compounds the preemption problem. Dismissing the complaint on a factually incorrect ground independently frustrates Congress's purpose of providing citizens with a meaningful administrative forum to raise Title III concerns.

62. Plaintiff is entitled to declaratory and injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908), preventing Defendant from applying the thirty-day post-certification deadline and related intake practice in a manner that extinguishes the federally mandated Section 402 process for complaints alleging violations that are occurring or about to occur.

**COUNT III**

**42 U.S.C. § 1983 – Violation of HAVA Section 402 Process Rights**

63. Plaintiff realleges and incorporates by reference paragraphs 1 through 61 as if fully set forth herein.

64. HAVA § 402 (52 U.S.C. § 21112) creates individual federal rights enforceable under 42 U.S.C. § 1983. The provision satisfies the three-part test established in *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997): (a) the statute was intended to benefit individual complainants, not merely the public at large, as shown by its express conferral of rights on "any person" who files a complaint and the "complainant" who requests a hearing; (b) the right is not vague or amorphous

but specific and concrete: a compliant filer is entitled to have the complaint accepted, to receive a hearing on the record, and to receive a written determination within 90 days; and (c) the statute imposes binding obligations using mandatory "shall" language throughout.

65. The Section 402 complaint procedure is qualitatively different from the Section 303 substantive requirements that Defendant has argued are merely "technical" state obligations. Section 402 expressly confers rights on individual persons: "any person" may file a complaint, and the "complainant" shall receive a hearing on the record. These are not generalized directives to states. They are rights-conferring provisions that use the language of individual entitlement. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) ("For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited'"). Section 402 is phrased in exactly those terms. HAVA does not contain a comprehensive remedial scheme sufficient to foreclose enforcement under 42 U.S.C. § 1983. Section 402 requires each State to establish and maintain administrative procedures, but it does not provide an exclusive federal enforcement mechanism or displace traditional § 1983 remedies. Because Congress did not expressly or impliedly foreclose § 1983 enforcement of the federally mandated adjudicatory process, Plaintiff may seek prospective relief under § 1983 for the denial of those rights.

66. Multiple federal circuits have recognized enforceable rights under Title III of HAVA using this framework. See *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 572-74 (6th Cir. 2004) (holding HAVA creates a federal right enforceable under § 1983); *Colón-Marrero v. Vélez, 813 F.3d 1, 14-22* (1st Cir. 2016)(analyzing HAVA provisions under the *Blessing* framework).

67. Acting under color of state law, Defendant deprived Plaintiff of her federally protected rights under Section 402 by refusing to accept her complaint, refusing to provide the

hearing she requested, and refusing to issue a determination, all on factually false and legally defective grounds, in violation of 42 U.S.C. § 1983.

## COUNT IV

### 42 U.S.C. § 1983 – First Amendment Right to Petition

68. Plaintiff realleges and incorporates by reference paragraphs 1 through 66 as if fully set forth herein.

69. The First Amendment protects the right of the people to "petition the Government for a redress of grievances." U.S. Const. amend. I. This right encompasses meaningful access to administrative agencies. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). The right is not satisfied by a formal ability to submit a document if the State then forecloses the only congressionally mandated forum for adjudication.

70. Plaintiff petitioned the State through the federally required Section 402 complaint procedure and requested the hearing on the record and determination Congress mandated.

71. Defendant, under color of state regulation and established practice, terminated Plaintiff's petition at intake on grounds that are factually false and legally in conflict with the federal statute, denied any hearing and determination, and thereby denied Plaintiff meaningful access to the mandated adjudicatory forum.

72. Defendant's actions violated Plaintiff's First Amendment right to petition for redress of grievances, actionable under 42 U.S.C. § 1983.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and grant the following relief:

A. Declare that Defendant's intake dismissal of Plaintiff's HAVA Section 402 complaint, without providing the requested hearing on the record and without any merits determination, violated Plaintiff's procedural due process rights under the Fourteenth Amendment.

B. Declare that, as applied to Plaintiff's complaint alleging violations that are occurring or about to occur, Missouri's thirty-day post-certification deadline and related intake practice conflict with and are preempted by 52 U.S.C. § 21112(a)(2)(B) and (E).

C. Declare that Defendant's dismissal of Plaintiff's complaint on the ground that Plaintiff failed to provide the name and address of the alleged violator is factually incorrect and therefore arbitrary.

D. Enjoin Defendant from rejecting or dismissing Plaintiff's HAVA Section 402 complaint on the ground that Plaintiff failed to identify the alleged violator where Plaintiff identified the Missouri Secretary of State – Elections Division and its mailing address.

E. Enjoin Defendant from applying the thirty-day post-certification deadline in 15 CSR 30-12.010(3) in a manner that forecloses complaints alleging violations that are occurring or about to occur, contrary to 52 U.S.C. § 21112(a)(2)(B).

F. Order Defendant to accept and adjudicate Plaintiff's HAVA Section 402 complaint in compliance with 52 U.S.C. § 21112(a), including providing the hearing and determination required by federal law.

(1) A hearing on the record upon Plaintiff's request, as required by 52 U.S.C. § 21112(a)(2)(E) and 15 CSR 30-12.010(8);

(2) A written final determination within 30 days of this Court's Order, with an expedited hearing within 21 days of the Court's Order requiring acceptance and processing of Plaintiff's HAVA Section 402 complaint;

(3) Preservation of all relevant MCVR data, voter history records, snapshots, export files, audit logs, and related records for the 2022 and 2024 federal elections pending completion of the HAVA administrative proceeding.

G. Award Plaintiff taxable costs as permitted by law and such other relief as the Court deems just and proper.

H. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

February 12, 2026

Electronically Signed By: *Constance Kramer*
Constance Kramer
Plaintiff, Pro Se
572 Stratford Avenue
St. Louis, Missouri 63130
(314) 359-5828
connie.kramer@pm.me

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2026, the foregoing was filed electronically via the Court's CM-ECF system and was served by operation of the CM-ECF system on all counsel of record.

Electronically Signed By: *Constance Kramer*
Constance Kramer
*Plaintiff, Pro se*