IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CONSTANCE KRAMER,<br><br>Plaintiff,<br><br>vs.<br><br>DENNY HOSKINS, in his official capacity as Secretary of State of MO<br><br>Defendant. | ) | Case No. 25-CV-4257-MDH |

MOTION HEARING
BEFORE THE HONORABLE M. DOUGLAS HARPOOL
WEDNESDAY, FEBRUARY 4, 2026; 10:05 A.M.
SPRINGFIELD, MISSOURI

APPEARANCES:

FOR THE PLAINTIFF: MS. CONSTANCE KRAMER
572 Stratford Avenue
St. Louis, MO 63130
PRO SE

FOR THE DEFENDANT: MS. KATHERINE MCCREIGHT
MO ATTORNEY GENERAL'S OFFICE-KC
615 E. 13th Street, Ste. 401
Kansas City, MO 64106

COURT REPORTER: MS. JEANNINE RANKIN, RPR,CSR,CCR
UNITED STATES DISTRICT COURT
222 N. Hammons Parkway
Springfield, MO 65806

Proceedings recorded by mechanical stenography; transcript produced by computer.

KRAMER v. HOSKINS

CASE NO. 25-CV-4257-MDH

MOTION HEARING

February 4, 2026

* * * * * *

THE COURT: We're here to take up and consider issues surrounding the temporary restraining order and preliminary injunction in Kramer v. Hoskins.

Who will be appearing on behalf of Ms. Kramer?

MS. KRAMER: Your Honor, I will, Constance Kramer.

THE COURT: All right. And you're appearing pro se?

MS. KRAMER: Yes, sir.

THE COURT: And on behalf of the Attorney General's Office?

MS. McCREIGHT: Katherine McCreight for defendant.

THE COURT: All right. Are you with the Attorney General's Office or Secretary of State's Office?

MS. McCREIGHT: Attorney General's Office.

THE COURT: All right.

I want to take up and consider these issues. I'm going to start with asking a lot of questions. I've read this material. Obviously have been a judge for 12 years and this is the first case I've had arising out of this particular act so I have a lot of learning to do at the same time that we need to make an adjudication, and I feel like I need some

general background before I can make an informed decision.

So I want to ask each of you when you speak, if you'd come to the podium here and speak. That makes the microphones work better and easier for us to understand.

I want to start with asking Ms. Kramer, if you would, give me -- if you would come and just tell me what you think -- or how you think the State may be in violation of the Help Americans Vote Act of 2002.

And let me clarify. I want to make it clear that it's my understanding that the petition that's been filed doesn't so much ask this Court to make an adjudication at this time as to whether the State's in violation but whether simply to rule whether you are entitled to a hearing in front of the Secretary of State on that topic.

Would you agree that's the scope of this lawsuit?

MS. KRAMER: Yes, Your Honor.

THE COURT: All right. But in order to know whether the procedures set up by the State interfere with those rights, I feel like I need to at least have a general understanding of what you think the basis of your complaint is.

MS. KRAMER: Well, the basis of my complaint is for a HAVA hearing, which is Section 402 and Section 303(a)(1)(A). It requires each state to implement a single, uniform, official, centralized interactive computer registration list.

And what happened is the State certified one count, the voter histories in the State's own record had another count, and then the --

THE COURT: When you're talking about your counts, I notice sometimes we're talking about votes cast.

MS. KRAMER: Yes.

THE COURT: The law talked about registered voters. Those are different numbers. So are you complaining that those -- how do the different turnout numbers you think impact the different voter registration lists?

MS. KRAMER: I'm not -- it's not the turnout numbers; it's the numbers that were counted. I'm just looking at the counts, the totals that were counted from the registered voters. So the counts don't match. How can you have three different totals?

THE COURT: All right. But isn't that a different issue than whether or not the State maintains a centralized voter registration list?

MS. KRAMER: That's part of it because it's in the centralized voter registration lists that they record the votes counted, the registered voters, but also they record the vote histories.

THE COURT: Right. I mean, I've certainly been around politics enough I know that the candidates go and they find out who's a frequent voter and that's where they focus

their mailings and personal contacts and things. Are you saying that list doesn't exist?

MS. KRAMER: It exists but it is not accurate. And the list also changes.

THE COURT: Well, it's going to consistently change as people register and people move, people pass away. It's going to be a fluid list; you agree with that?

MS. KRAMER: Your Honor, the list is fluid but the voter histories should not be fluid. In a period of time from 2023 to 2024, 82,000 voter histories changed from the 2020 election. How three to four years later --

THE COURT: Stop right there.

When you say the voter histories changed, do you mean that if you go into the database today the number of times voter X voted might be different than if you went a few months ago and looked at how many times that voter voted?

MS. KRAMER: That's not the point I'm making, because there might be elections that --

THE COURT: Right.

MS. KRAMER: -- say they've voted since in the April election. What I'm saying is the voter histories from the 2020 election, people that were given that vote in 2020, 82,000 of those either disappeared, they had a voter history for the 2020 election or they did not have a voter history when the election was certified and three years later they

disappeared. Now, I have this from the 2020 election which I'm not arguing --

THE COURT: When you say disappeared, you mean they no longer were on the list at all or they were on the list but their voter history disappeared?

MS. KRAMER: Their voter history disappeared.

THE COURT: So they're still on the list?

MS. KRAMER: Sometimes. Sometimes the complete vote disappears. But I'm not questioning the 2020 election. I'm just giving you an example that even today, 2025, the totals don't match. So I'm looking for, you know, a record in time, you know, a standard that we freeze this record.

THE COURT: Are you one of the people whose voter history has changed?

MS. KRAMER: Mine has not changed. My data analyst has six voter histories before he lived in Missouri.

THE COURT: Who?

MS. KRAMER: A data analyst that I work with. I obtain the data and then he analyzes it.

THE COURT: In what capacity do you do these things, just as a private citizen or --

MS. KRAMER: As a private citizen and I work with a group of people around the country in a group called Unite For Freedom. We analyze data. We have 35 states' data. And we're finding the same patterns. That's the interesting thing

is it's not just Missouri but it's 35 other states that we've looked at the same things.

THE COURT: Are you aware of anyone who claims that they voted in the 2020, '24, any election, but their voter history shows that they didn't vote?

MS. KRAMER: Yes.

THE COURT: All right. You do have those people?

MS. KRAMER: Yes. And I do have one election where my vote was changed, where I arrived to vote and I was an election judge and when I arrived I said, Here's my absentee ballot, I have not opened it, I would like to vote today -- because I wanted to learn the process. They said, You cannot vote. You've already voted. And I said, How? How could I have voted? So, yes, it's a personal injury. And I'm not arguing this is a general --

THE COURT: And what jurisdiction is it that you vote in?

MS. KRAMER: St. Louis County.

THE COURT: They have an election board, right?

MS. KRAMER: They do.

THE COURT: They used to.

MS. KRAMER: Yes, they do.

THE COURT: All right. Let me now turn to the more specific issues.

In this case you filed a complaint with the

Secretary of State's Office to address the issues you just discussed with me, I assume. And when did you file that complaint?

MS. KRAMER: I filed that complaint on November 6, 2025 with the federal court. I filed the complaint on October 15, 2025 with the Secretary of State's Office.

THE COURT: Say that date, that second date.

MS. KRAMER: October 15, 2025. And the -- the original complaint, and the complaint was dismissed four days later.

THE COURT: All right. And it was dismissed allegedly because you weren't within 30 days of certification of an election which the state code of state regulations has as a requirement?

MS. KRAMER: Correct, Your Honor.

THE COURT: When do you believe that the election certification date began to run? When do they consider that -- when do you consider the prior election was certified?

MS. KRAMER: Well, it was -- the elections are certified within 30 days --

THE COURT: Of the actual election?

MS. KRAMER: -- of the actual.

THE COURT: So the '24 election in November would have been certified sometime in December of '24?

MS. KRAMER: I believe it was December 12th.

THE COURT: All right. And you were there. So you were ten months behind that date when you filed.

Do you consider the basis of your complaint a complaint about the election or a complaint about the voter registration list?

MS. KRAMER: My complaint is not questioning the election or the outcome of the election. It's about process and procedure.

THE COURT: All right. And then the other issue that the government raised in denying you a hearing was that you did not identify the person against whom the complaint was made. Who did you identify?

MS. KRAMER: Your Honor, on page 3 of my original --

THE COURT: I'm -- just for this hearing I want to make our record.

MS. KRAMER: Yes. The respondent I identified was Missouri Secretary of State, the elections division.

THE COURT: And that's who in this state supervises elections?

MS. KRAMER: This would be Secretary of State Denny Hoskins.

THE COURT: Now, was Hoskins Secretary of State in 2024 or was he elected in 2024?

MS. KRAMER: He was elected in 2024. Secretary of State was Jay Ashcroft who is the one who certified the

elections.

THE COURT: All right. If you're not contesting the past election results do you consider yours to be a forward-thinking complaint about concerns about future elections rather than past elections?

MS. KRAMER: Yes. According to HAVA, the rule that they have is --

THE COURT: Yeah, I know it specifically talks about future. But I'm trying to figure out what you -- you're concerned about them about the future, not about the past so much?

MS. KRAMER: Yes, that it's still occurring, the violation is still occurring, and that it will occur, is my main point, in 2026, which is here.

THE COURT: All right. Thank you.

Let me talk to the defendant here for a moment, if she'd come to the podium.

MS. KRAMER: Thank you, Your Honor.

THE COURT: All right. Do you agree that the election was certified in December of 2024?

MS. McCREIGHT: I believe so. I'm -- I don't have the exact date but that sounds right.

THE COURT: Within 30 days of the election or something like that?

MS. McCREIGHT: Right. Yeah.

THE COURT: All right. Do you contend the State maintains a consistent voter registration list?

MS. McCREIGHT: Yes, Your Honor.

THE COURT: Would there be an explanation of why someone's voter history would change at some point?

MS. McCREIGHT: I'm not sure I know that. The State's required to submit data to the federal government to review, make sure they're in compliance with HAVA. I'm not aware of any issues that have come up with that.

THE COURT: You're not aware of that existing?

MS. McCREIGHT: Any discrepancies existing based on that.

THE COURT: So you think these discrepancies cited by Ms. Kramer are imaginary?

MS. McCREIGHT: I don't think that there are discrepancies.

THE COURT: Well, why should she not have a hearing in front of the Secretary of State's Office under HAVA to hear her complaints and receive her data?

MS. McCREIGHT: Well, Missouri has a statutory scheme that provides her --

THE COURT: Is it statutory or is it --

MS. McCREIGHT: It's a regulation.

THE COURT: A regulation adopted by the Secretary of State?

MS. McCREIGHT: Right. For that process that complies with HAVA and meets the requirements laid out by it.

THE COURT: You think it complies with HAVA. Do you agree that -- let me get the -- that under HAVA -- and I'm reading the Federal Title 52, Section 21112 (a)(2)(B).

"Under the procedures any person who believes that there is a violation of any provision of Subchapter 3, including a violation which has occurred, is occurring or is about to occur may file a complaint."

Now, do you agree that that is Ms. Kramer's right?

MS. McCREIGHT: Yes, Judge.

THE COURT: So if she contends that it is a occurring violation or is about to occur for the next election, then how can requiring her to file that complaint within 30 days of the last election comply with HAVA?

MS. McCREIGHT: I don't think that there's anything in HAVA that says that states can't have a timeframe during when you can submit a complaint. I guess she could file one ahead of the next election.

THE COURT: So is it your position that once an election is certified, if you don't identify a problem with an election within 30 days that violation is just to be ignored?

MS. McCREIGHT: I think that kind of works with what the types of violations would be that are supposed to be addressed under HAVA.

THE COURT: Well, if there indeed are people whose voter histories are being changed, as she alleges -- again, I'm not here to make a decision whether that's true or not -- and we have an election coming up in November of 2026, shouldn't she be able to present under HAVA that issue in a complaint to the Secretary of State's Office for the Secretary of State to at least consider and review whether they think there's merit to it outside of the 30-day requirement?

MS. McCREIGHT: I'm sorry. Can you repeat the question?

THE COURT: How does it comply with HAVA if the only complaint you can raise is something that you have identified within 30 days of the certification? What if you identify one later?

MS. McCREIGHT: Well, I think that HAVA provides that you can make a complaint about violations of a number of things laid out under the statute.

THE COURT: All right. So let me ask you this. If she were to file a new complaint today advancing these forward-thinking concerns about the next election, would she be entitled to a hearing?

MS. McCREIGHT: I can't say for sure but probably not because of the deadline, or the timeframe, like today.

THE COURT: You're talking in circles here.

MS. McCREIGHT: I'm sorry.

THE COURT: How can -- if you learn of a problem -- let me read the law again to you. It says, "Under the procedures any person who believes there is a violation of any provision of Subchapter 3, including a violation which has occurred -- " and that's what you're talking about, if it was about the last election, that's one that has occurred "-- is occurring -- " which is what she is contending, is that it's still going on, as I understand it "-- or is about to occur -- " that is, something that she thinks is going to happen before the next election "-- they may file a complaint."

Then two paragraphs later E says, "At the request of the complainant there shall be a hearing on the record."

So if she were contesting that the 2024 election -- I understand fully the 30-day requirement and the -- I don't know that that would be in compliance or not. I don't have to make that ruling. But when you're dealing with ongoing or continuing violations or fear of future violations based -- again, she'd have to produce evidence at this hearing -- then how can that 30-day requirement after the last election be applicable?

MS. McCREIGHT: I think that the statute says that she shall be allowed to file a complaint but I don't think that there is anything that limits.

THE COURT: So, I mean, at the most perhaps she should file a new complaint with the Secretary of State's

Office and ask for a hearing and make it applicable to ongoing problems, which I think is what she's told me that she tried to do last time.

I'm not saying that there's anything wrong with the voter registration list. I have no idea if there is or not. I'm just trying to say that under this it seems like she is entitled to a hearing if she makes an allegation of a violation of Subchapter 3 which has occurred, is occurring or is about to occur. And maybe the 30-day requirement makes sense as to the has occurred, but I don't understand how the 30 days from the last election makes any sense when you're dealing about an ongoing violation or one that is about to occur.

So do you -- explain why that is okay.

MS. McCREIGHT: I think that the 30-day requirement, again, works with the types of complaints that HAVA usually deals with.

THE COURT: Okay. So you're talking about whether there's a Subchapter 3 violation?

MS. McCREIGHT: Yes.

THE COURT: Are you contending that a complaint about changing voter history and voter registration under Chapter 3 -- Subchapter 3 is not a violation of Subchapter 3 and it's a different kind of violation?

MS. McCREIGHT: That's not the typical type of

violation that would be --

THE COURT: What's the typical type?

MS. McCREIGHT: I think HAVA is -- like it mainly deals with access to voting, the ability to cast a provisional ballot, if an individual has had their voter registration purged from a voter roll, is unable to vote around the election.

THE COURT: I'll ask the plaintiff a little bit more about why they think it's a subchapter violation.

What you're saying is this would be an unusual complaint?

MS. McCREIGHT: From my understanding, yes.

THE COURT: All right. Now, let's talk about the second ground on which the State denied the hearing, failure to identify the person.

Do you agree that the director of elections in the Secretary of State's Office is the person who supervises and monitors the voter registration list of the state?

MS. McCREIGHT: I am -- I think so but I'm not 100 percent sure.

THE COURT: All right. Was there a change in the identity of the director of elections for the state? Who is that now, do you know?

MS. McCREIGHT: I don't know. I can check quickly.

THE COURT: Let's say the plaintiff wanted to file a

new complaint. Who does the State think the right person is to name in that complaint?

MS. McCREIGHT: In her specific complaint?

THE COURT: Yeah.

MS. McCREIGHT: The person that she's alleging violated her --

THE COURT: All right. And she thinks it's whoever runs the voter registration list. So who runs the voter registration list in this state?

MS. McCREIGHT: I think the Secretary of State.

THE COURT: Did that change when the new Secretary of State was elected? Did the director of elections change?

MS. McCREIGHT: The individual did, yes.

THE COURT: All right. And so who is it now?

MS. McCREIGHT: Denny Hoskins.

THE COURT: He's the Secretary of State. Do you think the complaint should be filed against him, then? Is he the right person to name? Or does he have someone who he has assigned to be in charge of elections and is that the right person to name?

MS. McCREIGHT: For her specific complaint, I don't know who the right person to name would be. I'm sorry.

THE COURT: Tell me this. How can an average citizen enforce their rights and file a complaint if the Attorney General of Missouri cannot tell the person who the

correct person is to name in the complaint and then have the Secretary of State say we're going to deny you a hearing because you named the wrong person?

This isn't a game. It's a legal right. There is someone who's the right person to file it against. You're telling me here you don't know who that is?

MS. McCREIGHT: I guess for hers it would be the person who oversees the list, I just don't know that person's name right now. I'm sorry.

THE COURT: But isn't that exactly who she identified in her complaint, not by name but by title?

MS. McCREIGHT: I think she identified the division just generally, the agency, the part of the agency.

THE COURT: The division of elections, right?

MS. McCREIGHT: Yes.

THE COURT: Which is within the Secretary of State's Office.

MS. McCREIGHT: Yes.

THE COURT: All right. Isn't that the division that supervises voter registration lists?

MS. McCREIGHT: Yes.

THE COURT: So why is that not the right person?

MS. McCREIGHT: I mean, it's not a person.

THE COURT: Is it a robot?

MS. McCREIGHT: No, it's --

THE COURT: Is it AI?

MS. McCREIGHT: No.

THE COURT: It is a person.

MS. McCREIGHT: Okay.

THE COURT: Did the Secretary of State's Office know who the director of elections was at that time or was that a surprise to the Secretary of State who appoints that person?

MS. McCREIGHT: The Secretary of State would have known who that person was.

THE COURT: Exactly. So there was nothing surprising or mysterious about the identity of that person when the complaint was filed, correct?

MS. McCREIGHT: Correct.

THE COURT: All right.

Let me talk to the plaintiff again.

Is your complaint a Subchapter 3 complaint?

MS. KRAMER: Yes, it's a HAVA Title III Section 303 and 402 violation.

THE COURT: And the violation is what?

MS. KRAMER: That the Title III is not applied properly in the 2022 and 2024 elections and in the upcoming 2026 election, the violation is continuing and ongoing, that there's not the single, centralized voter registration list, and there's not a snapshot in time, there's not a frozen point in time where the list is this, this is who voted at this

point in time.

THE COURT: Let me ask you this: If you wanted to know the identity of everybody who voted in the 2024 November election -- you don't know how they vote but just whether they voted -- is that information that you think the Secretary of State's Office is incapable of providing today?

MS. KRAMER: They have provided it. I request that data every single month. They provide it the first of the month.

THE COURT: All right. But do you think that information has changed --

MS. KRAMER: Yes, Your Honor.

THE COURT: -- as to who voted in the 2024 election?

MS. KRAMER: Yes, Your Honor. That appears to have changed from the State's own records.

THE COURT: All right. But are the changes that voters disappeared from the rolls for one reason or another or voters moved out of state or people moved in states or people moved from jurisdiction to jurisdiction or is the actual record of a particular voter changed?

MS. KRAMER: Both, Your Honor. In this instance I'm saying that the certified totals, the numbers don't match and they keep changing.

THE COURT: Okay. You keep talking about certified totals and I'm nervous about relying on those. What I want to

know is are there individual voters who on one occasion the list you've been provided says voted in the 2024 election but on the next list it says they didn't vote in the 2024 election?

MS. KRAMER: Yes, Your Honor.

THE COURT: All right. That's more concerning to me. The total numbers, there's so many things that impact the -- do you count foreign ballots and do you count absentee ballots and do you count only people who voted in a presidential election or do you count people who voted in down ballot elections? All those other numbers are hard to -- but if an individual's record changes, that's of concern.

MS. KRAMER: Yes, and hundreds of thousands of those records changed.

THE COURT: All right. One issue raised by the defendant that we in law have to worry about is the issue of standing. The State has raised the grounds that HAVA is not something that a private individual has any right to enforce, that any enforcement of it must come from, I guess, a governmental agency, maybe the federal government. So tell me why you believe that you have individual standing to pursue this lawsuit, not necessarily a challenge of HAVA, but this lawsuit.

MS. KRAMER: In the TRO or in the complaint filed?

THE COURT: Well, in either. I'm going to get to

another issue on the TRO here in a minute.

MS. KRAMER: Well, first of all, this is not --

THE COURT: You personally requested the hearing, correct?

MS. KRAMER: Yes, Your Honor.

THE COURT: All right. And you personally wanted to raise these issues?

MS. KRAMER: Yes, Your Honor.

THE COURT: But it's not your personal record that you claim was changed?

MS. KRAMER: My personal record, I was an individual voter and my record is on that -- the voter history so, yes, it is a personalized --

THE COURT: But has it changed?

MS. KRAMER: Well, one of my records is incorrect.

THE COURT: All right. And you fear that given the inconsistency in the other peoples' that yours could change?

MS. KRAMER: Yes. My injury is personalized and particularized because I filed a specific sworn HAVA 402 complaint and I received a dismissal letter denying me the process.

THE COURT: The right to hearing is --

MS. KRAMER: Right.

THE COURT: I'm looking more -- I don't know if you can sue to enforce HAVA in terms of the substance of HAVA.

That's not before me. What's before me is whether you have a right under HAVA to a hearing that you were denied.

MS. KRAMER: Yes.

THE COURT: That's my understanding of --

All right. Let me get to the other issue on TROs. All right? I have to find irreparable injury.

MS. KRAMER: Correct.

THE COURT: What is the irreparable injury that you will suffer if we don't order a TRO?

MS. KRAMER: The irreparable injury that I would suffer, Your Honor, is I was denied the ajudicatory process. I was denied my right to have a hearing and the -- the 90-day process. That's all I'm asking for. I'm looking at process. I'm not challenging an election. I'm just looking at the process to have a hearing to discuss these matters.

THE COURT: All right. Ever since I read your original complaint and I've been reading this material, given the 30-day requirement I am puzzled as to how that would apply to ongoing violations -- alleged violations or concerns about future violations of voting rights. Have you contemplated just filing another complaint?

MS. KRAMER: Your Honor, I can if --

THE COURT: I'm not telling you to. I'm just saying and if you did, if we could get you the right name of the person to name, then the two obstacles they've created in

front of you would go away. That doesn't mean they wouldn't find another reason not to give you a hearing because they apparently think the 30-day requirement includes the future, which I think is nonsensical but --

All right. Are you aware of any lawsuits that have been filed nationwide ever where a person's been denied a hearing in your situation where there's been a Court opinion of any nature defining the procedures that a State may establish for that hearing process?

MS. KRAMER: Well, may I back up to one thing about the 30-day process --

THE COURT: Yeah.

MS. KRAMER: -- before I get to this?

One of the problems with the 30 day, it's a rule, it's not a law.

THE COURT: Right, it's a rule.

MS. KRAMER: Is the revised -- the RSMo for Missouri, the Revised Statutes, 115.157 states that each county has three months after the election to submit their voter data, the voter history data. And so I'm denied a process with an abstract, arbitrary 30-day rule yet the voter history isn't there for three months.

THE COURT: All right. Let me see if I understand what you just said.

If the State certifies an election, however for a

60-day period after that certification the state law allows counties to send in their information. And what you're saying is if there are errors in that information sent in by counties, the State's 30-day requirement prevents a hearing on the accuracy of that information?

MS. KRAMER: Correct. Your Honor, you can't even look at the -- the information isn't even available until three months after the election, so how could a 30-day rule apply?

THE COURT: If there was a failure, you wouldn't be able to raise it in a complaint within 30 days of certification?

MS. KRAMER: Yes, Your Honor.

THE COURT: All right. I understand that.

Is there any way to know in any of your investigations or research whether the changes that you have identified and that you contend you identified are occurring at the county level or after the data is transposed to the State?

MS. KRAMER: Your Honor, we have spoken to a few of the county clerks and there are limited cases where there's a reason -- where they have a reason that they changed it, but it's still a certified document and it should be frozen in time. I understand that they may -- there are small instances but it appears to be that this situation is beyond even the

state or the county level. It seems to be that there's interference.

THE COURT: All right. Well, let's assume that the voter history is incorrect. Do you believe HAVA requires not just an accurate voter registration list but accurate voter history?

MS. KRAMER: Yes. That's the evidence, the data that supports the certification. Isn't that in the hearing what it's based on is evidence, correct?

THE COURT: Well, it gets a little bit to your irreparable injury. Let's assume -- why do you need to know the voter history from elections for seven last elections to protect your right as a voter in the future?

MS. KRAMER: Because if that data is changing, it's --

THE COURT: That data is not used for anything except for campaigns and mailings to identify who is a likely voter, right?

MS. KRAMER: But it's an official document and it should be -- it should be maintained. That's what the federal law says with HAVA, and that the State has to maintain this. They're not freezing it or capturing it at one point in time.

THE COURT: So you're relying on the word maintain in HAVA?

MS. KRAMER: Maintain, and there's some shalls in

there as well.

THE COURT: All right. What particular section of HAVA can you refer me to on that?

MS. KRAMER: As you mentioned previously, 52 21112. If you would allow me to grab my list?

THE COURT: I've got it right in front of me.

MS. KRAMER: Okay.

THE COURT: "The State shall be required to establish and maintain State-based administrative complaint procedures which meets the requirements of Paragraph 2."

I'm looking for where the actual database as to what it requires. I guess that's 402?

MS. KRAMER: Yes.

THE COURT: Okay.

All right. Let me talk to the defendant again.

MS. KRAMER: Okay. And I'd be happy to provide clear, concise understandings in writing as well.

THE COURT: All right.

Attorney general hasn't addressed a couple issues that I want her to identify, if she can.

First, let's talk about the new issues she raised that I hadn't broached earlier that -- what about the three months after election that counties have to send in their data? If the 30-day requirement applies, how could an error in those county submissions ever be addressed under HAVA under

the State's 30-day requirement as you interpret it.

MS. McCREIGHT: Well, the State has a 30-day requirement but they don't require any data or anything to be submitted. After somebody submits a complaint, then the State investigates their complaint and presumably would find all the data that would be necessary.

THE COURT: Do you agree that a county has 90 days after the election to submit their final records on the election under that statute that was cited by the plaintiff?

MS. McCREIGHT: Can you remind me of that number?

THE COURT: Would you share that number with us again?

MS. KRAMER: It is 115-157 under Revised Statutes of Missouri from 2022.

MS. McCREIGHT: I mean, if that's what the text --

THE COURT: Well, we may do some more briefing on that here in a second.

What if something is learned outside of the 30-day period that brings into question the validity of an election and the voter -- accuracy of the voter registration list for who voted? What if we identify fraud in who voted after the 30-day period certification? We just forget about it?

MS. McCREIGHT: No, I think that that would just be a different type of like remedy, or I think that that would just be a different process. I think that's kind of outside

the scope of HAVA.

THE COURT: Instead of a HAVA complaint, then, that would be what, a lawsuit in federal court?

MS. McCREIGHT: I'm -- I don't know but I can do additional briefing.

THE COURT: You raise a standing issue in your briefing?

MS. McCREIGHT: Yes.

THE COURT: I was a little confused by it. If it's her complaint and she was the one denied a hearing, why wouldn't she have standing to challenge the denial of her hearing? I'm not talking about the substance of HAVA. I'm talking about her right to a hearing that she requested in her name on a complaint she filed in her name. Why wouldn't she have standing to raise that issue?

MS. McCREIGHT: Well, she seems to just allege that they're a procedural violation. She takes issue with the procedure that Missouri has. So her alleged harm isn't sufficiently concrete. And then --

THE COURT: You're talking about her underlying complaint. I'm just talking about her right to a hearing on her complaint. Maybe you would hear the complaint and dismiss it and say she has no right to raise these issues or there's no validity to her claim. But the question here is whether she's entitled to the hearing of her complaint and I just

don't see how she wouldn't have standing to at least raise that issue. That's not saying she has a valid complaint. It just means that the law says at the request of the complainant there shall be a hearing on the record. She's the complainant. You denied her a hearing on the record. Regardless of whether that was an appropriate decision or not, doesn't she have standing to at least challenge her denial?

MS. McCREIGHT: No. Her alleged harms also aren't sufficiently particularized. They would apply to --

THE COURT: That's the substance of her complaint. I'm not saying whether she should have won or lost her complaint in the Secretary of State's Office. The question is she was denied a hearing. Does she not have the opportunity to at least challenge that in this court? I'm not saying she has a good challenge, but isn't she the right person to make that challenge? That's what standing is about.

MS. McCREIGHT: Right. I think that the denial of her -- I think that the hearing goes along with the complaint and so then when her complaint was denied for lack of jurisdiction based on the --

THE COURT: And I think you confused standing to the validity of her complaint.

All right. Let me talk about irreparable injury.

In this context what is irreparable injury to the eyes of the Secretary of State's Office? What would a voter

have to demonstrate to prove irreparable injury under HAVA involving changing voter histories in the voter registration list?

MS. McCREIGHT: Well, I think that maybe if their voter registration was removed and they weren't able to vote in an election.

THE COURT: If that individual, if her own voter registration was denied or was -- what if her voter history was changed? Would that be irreparable injury if you get it corrected?

MS. McCREIGHT: I think that HAVA mainly deals with the voter registration, so I think that the irreparable injury would have to do with the voter registration and -- yes, and also her specifically being -- her specifically having her voter registration removed would be maybe --

THE COURT: She claims her voter history changed. So would she have irreparable injury if she didn't get her hearing to raise that issue with the Secretary of State?

MS. McCREIGHT: No. I think that if it ends up -- if she thinks it's an ongoing violation, there would be an opportunity for her to file a complaint. Again, I don't think it's an irreparable injury.

THE COURT: Are you aware of any other cases that have addressed the right of a hearing under HAVA?

MS. McCREIGHT: Not specifically, no.

THE COURT: All right. Do you know if any other states have adopted the 30-day requirement which the State has adopted by rule?

MS. McCREIGHT: I have seen that other states have timeframe requirements. I don't remember if any specific states had the 30-day requirement.

THE COURT: All right.

Now, I have asked you all the questions to both of you that I wanted to ask to get a feel for what the issues are and things, but to the extent that one of you come here with a preparation remark that you want to give me that you think I haven't touched upon an issue and there's something else you want to say, then I am going to give you that opportunity.

We'll start with the plaintiff.

Is there something else you want to tell me that you feel you haven't told me and that my questions haven't allowed you to relate to the Court that you think I should know or consider?

It's -- hope you all understand, it's more helpful for me to do things in the order in which they come to my mind as I evaluate things.

All right.

MS. KRAMER: Thank you, Your Honor.

First of all, I do have a list of the federal hearings -- the cases that have been cited in other similar

election cases, and I would like to just summarize that we also have the --

THE COURT: Let me say this. Both sides are going to get a brief period after this hearing to submit any additional written suggestions that they want to suggest based on questions that I've raised, so you will get that opportunity, but go ahead.

MS. KRAMER: Okay. If I could just summarize why I came here today and what I wanted to say.

THE COURT: All right.

MS. KRAMER: There are two reasons the motion to dismiss must be denied. First, the defendant dismissed my administrative complaint claiming I failed to provide the name and address of the person and on page 3 we've gone through that. But this satisfies the agency's own rule. The rule does not require the naming of a human being. At minimum, this creates a record-based factual dispute that cannot be resolved against me on a motion to dismiss. On that basis alone dismissal is improper.

Secondly, Congress requires states to provide a complaint process allowing any person to file for violations that have occurred, are occurring or about to occur, as you have also brought up, with a hearing and a determination. That's what I'm requesting. Once I invoked that process, access to it became a protected entitlement. Under *Logan v.*

*Zimmerman Brush Co*., the State may not arbitrarily destroy that entitlement. Here Missouri did exactly that by applying a rigid 30-day deadline that as applied to ongoing and future violations it closes the federal forum before the State's own official data exists. As I mentioned in Revised Statutes of Missouri 115.157 and 115.219, the State's evidence is not available until a month after, so the deadline conflicts with reality and with HAVA, express coverage of ongoing and future violations.

For both reasons, the dismissal fails. And I rest on my pleadings, Your Honor. And I would like to have a hearing.

Thank you.

THE COURT: All right.

On behalf the State, do you have anything further you would like to add to the record or -- if so, let's do it from the podium so we can hear you better. If not, we'll conclude the hearing.

MS. McCREIGHT: No, Your Honor.

THE COURT: All right.

I want to -- everybody's going to have -- what is today, Wednesday? I'll give you till next Wednesday at five to file any supplemental written briefings that you want to file based on the questions I've asked you.

Again, this is an area of law that hasn't had a lot

of litigation and it's one that's -- I think the only case I've had in this court on it. And so I want us to focus, though, on whether the reasons for the hearing being denied expressed are valid. Now, that would include whether the complaint raised issues appropriately covered by HAVA but not the merits or value of those complaints. It would include, obviously, the 30-day requirement and state rule and it would include the need to identify the person against the complaint.

To find a TRO we also have to find irreparable injury. Certainly the right to vote is precious but I don't know that there's any immediate election coming up, so the question is whether the voter histories would be sufficient to be deemed irreparable injury.

With that, we will adjourn our hearing and I will look forward to your written briefs. And I will get an order out. I know the plaintiff has been eager for me to do something on this case. I wanted to familiarize myself with the law and also I -- with no immediately pending election, I felt like -- I guess there are some local elections but nothing -- I felt like I wanted to take time and try to get it right. We will look forward to your written suggestions and then get an order out.

Thank you all for your time. We'll be adjourned.

(Court stands in recess at 11:00 a.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Jeannine M. Rankin, Federal Official Court Reporter, in and for the United States District Court for the Western District of Missouri, Southern Division, do hereby certify that the foregoing is a true and correct transcript of the stenographically reported proceedings.

*/s/ Jeannine M. Rankin*

Date: 02/13/2026 Jeannine M. Rankin, CCR, CSR, RPR