**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| CONSTANCE KRAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-04257-MDH |
| | ) | |
| DENNY HOSKINS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE**

Defendant Denny Hoskins ("Defendant"), in his official capacity as Secretary of State of Missouri, through counsel, respectfully submits this Response in Opposition to Plaintiff's Motion to Enforce Docs. 30, 34, and 36 Following the June 1, 2026 HAVA Determination and June 3, 2026 Post Determination Production.

**A. Summary of the Court's Orders (Docs. 30, 34, and 36)**

**1. March 5, 2026 Order (Doc. 30)**

In October 2025, Plaintiff filed her HAVA Complaint with the Secretary of State's Office. (Doc. 1-2.) The Secretary of State's Office dismissed Plaintiff's HAVA Complaint due to loss of jurisdiction, because Plaintiff failed to meet the procedural requirements provided by 15 CSR 30-12.010, requiring that "complaints must be filed within 30 days of certification of the election and provide the names and addresses of the person or persons alleged to have committed the violation." (Doc. 1-1.) On November 6, 2025, Plaintiff filed her Verified Complaint for Declaratory and Injunctive Relief and Motion for Temporary Restraining Order and Preliminary

Injunction. (Doc. 1; Doc. 2.) On February 4, 2026, the Court held a motion hearing on Plaintiff's Motion for Temporary Restraining Order, and the Parties subsequently submitted supplemental briefs. (Doc. 20; Doc. 22; Doc. 23.)

On March 5, 2026, the Court entered its Order granting Plaintiff's request for relief in the form of a preliminary injunction. (Doc. 30 at 2.) Specifically, the Court found that Plaintiff was entitled to a hearing on her HAVA Complaint ("HAVA Hearing"). (*Id.* at 5.) First, the Court determined that the State could not deny Plaintiff's HAVA Complaint based on the expiration of the 30-day post-certification filing deadline in 15 CSR 30-12.010(3), because that "this provision does not allow for consideration of complaints for violations that '[are] about to occur' or are discovered after the 30-day deadline." (*Id.* at 6.) Second, the Court found that "Plaintiff's identification of the respondent on her HAVA complaint was sufficient to satisfy 15 CSR 30-12.010(4)(A)," which requires HAVA Complaints to state the "name and address of the person or persons alleged to have committed the violation of Title III of HAVA described in the complaint . . ." (*Id.* at 6-7.)

The Court ruled that "Plaintiff is entitled by federal law to a hearing," and ordered Defendant to "provide Plaintiff with a hearing on her complaint under HAVA §402," and to "make a final determination with respect to the issues raised in [Plaintiff's] complaint prior to the expiration of 90 days from the date of this Order, unless Plaintiff consents to a longer period." (*Id.* at 8-9.) The Court further ordered Defendant to "preserve all relevant MCVR data, voter history records, snapshots, export files, audit logs, and related records for the 2022 and 2024 federal elections

pending completion of Plaintiff's HAVA administrative proceeding or as otherwise required by law." (*Id.* at 9.)

**2. April 14, 2026 Order (Doc. 34)**

On April 9, 2026, Plaintiff filed her Emergency Motion to Enforce Preliminary Injunction and for Supplemental Order Requiring a Fair and Meaningful HAVA Hearing. (Doc. 31.) The Court held a telephone conference on April 14, 2026 to discuss Plaintiff's HAVA Hearing, which was scheduled to occur on April 24, 2026. (Doc. 33.) After the telephone conference, the Court entered an Order regarding the procedural requirements for the HAVA Hearing:

1. Secretary of State, Denny Hoskin's attendance at the Hearing is not required.
2. At the Hearing Plaintiff shall be allowed to question the witnesses present.
3. Nick La Strada – Director of Election Integrity shall be present at the Hearing.
4. Chrissy Peters – Elections Director shall be present at the Hearing.
5. If Director Peters does not know the details of the day-to-day operations of voter registration or inconsistent voter totals, someone in the office who knows those details must be present.
6. The Hearing must consist of live witnesses, not exclusively written testimony.
7. Written testimony may be presented. If any will be presented, the written reports shall be provided to Plaintiff 3 days prior to the Hearing.
8. 3 days prior to the Hearing, Defendant shall produce all relevant MCVR data, voter history records, snapshots, export files, audit logs, and related records for the 2022 and 2024 federal elections.

(Doc. 34 at 1-2.)

**3. April 22, 2026 Order (Doc. 36)**

On April 21, 2026, Defendant filed a Motion to Amend the Court's April 14, 2026 Order, requesting that the Court "clarify that Defendant is not required to

produce its 'audit logs' for every individual voter." (Doc. 35 at 1.) Defendant explained that "there is no way for the Secretary of State's Office to extract the information of all individual voters, and Missouri law prohibits the Secretary of State from releasing certain registration information," so "[p]roviding the audit log of every individual voter would require the Secretary of State's Office to take a screenshot of each log (for over four million registered voters) and then redact any sensitive data." (*Id.* at 2; Doc. 35-1.) Defendant argued that the amount of time required to produce the audit log of each individual voter in Missouri would be unduly burdensome. (Doc. 35 at 2.) On April 22, 2026, the Court entered an Order "agree[ing] that it would be unduly burdensome to produce the audit logs for every individual voter," and clarifying that "Defendant is not required to produce the audit logs for every individual voter." (Doc. 36.)

## B. Defendant complied with the Court's Orders regarding the hearing on Plaintiff's HAVA Complaint.

### 1. Defendant provided Plaintiff with a hearing on her HAVA Complaint.

On April 24, 2026, the Secretary of State's Office conducted a HAVA Hearing (the "Hearing") regarding Plaintiff's HAVA Complaint. (Doc. 37 at 1.) The Hearing began at 9:00 a.m. and lasted until approximately 5:00 p.m. (with an hour-long recess for lunch). (*Id.* at 2.) The Hearing was open to the public, and a court reporter was present to transcribe the Hearing. (*Id.*)

**2. Defendant produced written testimony three days prior to the Hearing.**

Three days prior to the Hearing, the Secretary of State's Office provided Plaintiff with the written testimony of Chrissy Peters. (Doc. 37-1 at 2.)

**3. Defendant produced relevant documents three days prior to the Hearing.**

By three days prior to the Hearing, the Secretary of State's Office had provided Plaintiff with all documents in its possession that it could identify as responsive and relevant. (*See Id.* at 2; Doc. 37-6.) At the Hearing, Plaintiff clarified that she wanted the election packets that the Secretary of State's Office received from the local election authorities. (Doc. 37-1 at 2.) The Secretary of State's Office had these documents for the 2022 and 2024 general elections in Archives, so after the Hearing, the Secretary of State's Office provided Plaintiff with a ShareFile link to the digitized records that are currently available and instructions on how to view or obtain the records that currently are not digitized. (*Id.*)

Plaintiff now "asks the Court to require production or protected review of the audit logs, voter record comments, merge and unmerge records, deleted record history, prior value and new value records, user and timestamp records, and source records . . ." (Doc. 41 at 7.) However, in its April 22, 2026 Order, the Court clarified that "Defendant [was] not required to produce the audit logs for every individual voter," as "it would be unduly burdensome to produce the audit logs for every individual voter." (Doc. 36.)

### 4. Defendant made witnesses available at the Hearing, including Nick La Strada and Chrissy Peters, and Plaintiff was allowed to question them.

At the Hearing, Plaintiff was allowed to question the witnesses present. (*See* Doc. 37-2.) The Secretary of State's Office made the following individuals available to provide information and to answer Plaintiff's questions at the Hearing: (1) Chrissy Peters, Director of Elections; (2) Nick La Strada, Director of Election Integrity; and (3) Eric Fey, Director of Elections for Plaintiff's local election authority, St. Louis County Board of Elections. (Doc. 37-1 at 1-2.) First, Chrissy Peters, Director of Elections, was present at the Hearing to provide information and to answer Plaintiff's questions:

> Starting at approximately 9:15 a.m. and continuing for the first two hours of the hearing, Complainant questioned Ms. Peters about: her role as Director of the Elections Division; the certification process, the records produced for the official number of votes, and the official total number of votes certified for the November 2024 general election; the total voter turnout and participation numbers and the records used to produce those numbers reported by the State to the EAC; queries to the MCVR to produce reports of who voted in the November 2024 general election; records received by the State from counties for election result certification and verification purposes; reports related to local election authority changes to voter records between the reporting of unofficial and official election results; how local election authorities determine whether an individual is eligible to vote; whether the MCVR uses and reuses unique numbers to identify individual voters; reports and logs of changes from MCVR relating to duplicate voter data; the management of the MCVR as a database; verification of voter information in MCVR; HAVA funding provided to the State and audits of those funds; point-in-time voter history records produced from MCVR; and the treatment of inactive voter information in MCVR.

(Doc. 41-1 at 6-7.)

> At 4:00 p.m., Respondent's counsel began questioning Ms. Peters about her knowledge of Complainant's scorecards derived from Complainant's compilation of the data extracted from the MCVR and her explanation

> of possible reasons for the variances in the data. Ms. Bryant also worked through the written testimony Ms. Peters provided for the hearing, testimony that focused on how the MCVR system stores and tracks voter registrations and complies with the required elements of Section 303(a)(1) of HAVA. Ms. Peters' testimony also explained how data extracted from MCVR shows numbers different from the data provided by the State to the EAC because those numbers track voter participation rather than voter turnout or voter registration and history. Ms. Peters then ended her testimony with a description of the process for certification of election results by the State.

(*Id.* at 10.) Second, Nick La Strada, Director of Election Integrity, was present at the Hearing to provide information and to answer Plaintiff's questions:

> In the hearing's fourth hour, Complainant called Nick La Strada to testify about: which county record becomes voter history in MCVR; voter and election integrity; roles of Respondent's employees; records and logs of changes to registration information in MCVR; records that show whether a vote cast in a particular election was accepted or rejected; which state records connected the voter participation records with certification records; local verification boards that verify the local election process; and who participated in a particular election and what voter history was certified.

(*Id.* at 8.) Third, Eric Fey, Director of Elections for Plaintiff's local election authority, St. Louis County Board of Elections, was present at the Hearing to provide information and to answer Plaintiff's questions:

> Mr. Fey answered Respondent's questions and provided information about a local election authority's responsibilities in incorporating a voter's registration, participation in an election, and voting history into the MCVR; public services requests ("PSR") regarding registered voter information from MCVR; special-case voter information in MCVR (provisional ballot voters, voters who move, Safe-At-Home voters, and other voters whose information is confidential by law); regular maintenance of the voter registration list in MCVR; and local canvassing of voters to verify residence information . . . Complainant questioned Mr. Fey about local records showing voter participation, uploads of local voter information into the MCVR, local efforts at reconciling voter participation and voter history after updates are made and the logs of those efforts and updates, which local record becomes the official local

> record for voter participation uploaded to the MCVR, and discrepancies in voter history data between specific reports generated from MCVR.

(*Id.* at 7-8.) Plaintiff produced Daniel Hume, who was questioned by both parties. (*Id.* at 8-9.)

**5. Defendant issued its final Determination with respect to the issues raised in Plaintiff's HAVA Complaint within 90 days of the Court's March 5, 2026 Order.**

On June 1, 2026, the Secretary of State's Office issued its final Determination regarding Plaintiff's HAVA Complaint. (*See Id.*) The Elections Division summarized the alleged violations of Title III of HAVA contained in Plaintiff's HAVA Complaint:

> Complainant alleges the following: in violation of Section 303(a)(1) of HAVA (52 U.S.C. §21083(a)(1)), for the 2022 and 2024 elections and the upcoming 2026 Federal election, Missouri did not and is not maintaining a single, uniform, official, centralized, interactive computerized statewide voter registration list serving as the official list for the conduct of Federal elections in Missouri.

(*Id.* at 11.) The Elections Division summarized the requirements provided by Section 303(a) of Title III of HAVA (52 U.S.C. §21083(a)) for the State's voter registration list for elections for Federal office (*see Id.* at 12-14); provided Findings of Fact regarding the State's maintenance of the Missouri Centralized Voter Registration System ("MCVR") in accordance with the requirements provided by Title III of HAVA (*see Id.* at 14-30); and offered its Conclusions based on the evidence presented (*see Id.* at 30-34.) Ultimately, the Elections Division "decline[d] to determine that there was a violation of Section 303(a)(1) of HAVA as alleged in the Complaint;" consequently, Plaintiff's HAVA Complaint filed on October 15, 2025 was dismissed. (*Id.* at 34-35.)

Plaintiff concedes that "[t]he State proved that MCVR exists," but argues "[t]hat was not the complaint." (Doc. 41.) Plaintiff now argues that her "complaint

asked whether Missouri could identify the preserved, auditable record chain proving what the State certified, what voter history existed, what county records fed MCVR, what EAVS figures were reported, what audit logs show changed, and how those layers reconcile or lawfully differ." (*Id.*) Although Plaintiff's concerns were addressed during the Hearing (*see* Doc. 37-2; Doc. 41-1), these specific concerns are not relevant in determining whether the State maintains a single, uniform, official, centralized, interactive computerized statewide voter registration list serving as the official list for the conduct of Federal elections, as required by Title III of HAVA.

The Elections Division concluded that "Complainant failed to produce any evidence that Section 303(a)(1) of HAVA requires Respondent to reconcile the EAC, SOS, and MCVR outputs that Complainant desires to reconcile," and "Complainant failed to produce any evidence that any provision of HAVA requires respondent to reconcile any voter participation or voter turnout totals with any voter registration information contained in the MCVR list in the manner or by a method by which Complainant desires to reconcile such numbers." (Doc. 41-1 at 33.) Ultimately, the Elections Division concluded that "Complainant failed to produce any evidence that Missouri has failed to comply with HAVA's Section 303(a)(1) requirement to maintain 'a single, uniform, official, centralized, interactive computerized statewide voter registration list' that serves as the official list for all federal elections." (*Id.*) (citing 52 U.S.C. 21083(a)(1)).

Defendant complied with the Court's Orders regarding the hearing on Plaintiff's HAVA Complaint, including the requirements to provide Plaintiff with a

hearing on her HAVA Complaint, to produce written testimony and relevant documents three days in advance of the Hearing, to produce witnesses for Plaintiff to question, and to issue its final Determination within 90 days of the Court's March 5, 2026 Order.

FOR THE FOREGOING REASONS, Defendant prays for an order of this Court denying Plaintiff's Motion to Enforce Docs. 30, 34, and 36 Following the June 1, 2026 HAVA Determination and June 3, 2026 Post Determination Production, and for all other relief the Court may deem just and appropriate.

Respectfully submitted,

**CATHERINE L. HANAWAY**
Attorney General

*<u>/s/ Katherine McCreight</u>*
Katherine McCreight, MO #76909
Assistant Attorney General
615 E. 13th Street, Suite 401
Kansas City, MO 64106
(816) 889-2255
Katherine.McCreight@ago.mo.gov
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2026, a copy of the foregoing document was electronically filed with the Court via its ECF system and thus sent to Plaintiff.

*<u>/s/ Katherine McCreight</u>*
Assistant Attorney General