**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| **CONSTANCE KRAMER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:25-cv-04257-MDH** |
| | ) | |
| **DENNY HOSKINS,** | ) | |
| **in his official capacity as** | ) | |
| **Secretary of State** | ) | |
| **of Missouri,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S REPLY SUGGESTIONS IN SUPPORT OF**
**MOTION TO ENFORCE DOCS. 30, 34, AND 36**

Defendant's Response in Opposition (Doc. 42) confirms the premise of the Motion. It does not provide a sworn accounting identifying the preserved record chain. It does not provide a technical declaration stating that the audit logs, extract records, snapshots, or reconciliation records can be produced at the system level. And it does not assert that MCVR, the EAVS figures, and the certified totals reconcile. Instead, the Response argues that those questions are "not relevant," Doc. 42 at 9, and that a single, narrow burden ruling—that Defendant need not produce "the audit logs for every individual voter," Doc. 36—excuses the entire record chain. Neither argument answers what the Court's Orders required.

The Motion does not ask this Court to re-weigh the merits of the June 1 Determination. It asks the Court to enforce its own Orders: to produce the record chain that Doc. 34 required three days before the hearing, to hold a hearing on the issues actually raised, and to account under oath for the records that were not produced in time to be tested. Compliance is measured against those

Orders—not against the reframed complaint the Response answers. On the Response's own admissions, the State has not complied.

This enforcement dispute is not only about the past. Plaintiff's complaint reached violations that, in this Court's words, "[are] about to occur," and the Court granted a hearing on "the ongoing and future violations she alleges." Doc. 30 at 6, 8. The records the State has not shown it can prove for 2024 are the same records on which Missouri's 2026 federal elections will rest—beginning with the August 4, 2026 primary, now weeks away. Plaintiff does not ask the Court to administer or supervise that election; she asks it to enforce the preservation, accounting, and disclosure its Orders already require—now, while those records can still be identified and tested—so the same process does not produce another unprovable result. That is why the Motion seeks continued preservation of "all relevant 2022, 2024, and 2026 federal election records," Doc. 40, Requested Relief ¶ 9, and why enforcement should proceed before another election cycle further complicates the record.

**I. Whether the State complied with the Court's Orders is for the Court to determine.**

The Response answers the compliance question by pointing to the Elections Division's own conclusions, reciting that the Division "concluded that Complainant failed to produce any evidence" of a violation, Doc. 42 at 9 (quoting Doc. 41-1 at 33), and treating that conclusion as dispositive. But a party's determination that it has complied is not the Court's determination that it has complied. This Court entered the Orders and expressly "retain[ed] jurisdiction over this matter for 90 days to ensure compliance with the Order," providing that "Plaintiff may notify the Court if Defendant has not meaningfully complied with this Order." Doc. 30 at 9. The adequacy of the Determination is the very matter in dispute; that document cannot establish the State's compliance by its own say-so.

The Orders themselves supply the standard. In Doc. 34, the Court reminded the parties of HAVA's requirement that a complaint be resolved, see 52 U.S.C. § 21112(a)(2)(I), and stated its purpose without qualification: "The right to vote is sacred and the accuracy of voting tallies is essential to our democracy. Public confidence in the accuracy of the voter registration process and voting tallies must be maintained. This Court intends for Plaintiff to be provided a meaningful hearing on her HAVA complaint." Doc. 34 at 2. A proceeding that establishes only that a database exists, while treating the accuracy and reconciliation of the certified tallies as "not relevant," is not the meaningful hearing the Court intended. Compliance is measured against that stated purpose.

The Response concedes that "Plaintiff's concerns were addressed during the Hearing," and then asserts that those concerns "are not relevant." Doc. 42 at 8–9. Concerns that are discussed and then deemed irrelevant are not concerns that have been answered. As the Haury Declaration explains, blind assertions are not adjudication; a general statement that "MCVR is official" is not a reconciliation, and "records change" is not an audit log. Ex. 7 ¶¶ 17–19. The Court ordered a determination "with respect to the issues raised in [Plaintiff's] complaint," Doc. 30 at 8–9 (quoted at Doc. 42 at 2)—not a determination limited to the single question the State preferred to answer. Whether the State addressed the issues actually raised, or instead substituted a question it could answer, is for the Court to decide on enforcement. That the Response devotes several pages to the topics Plaintiff was permitted to raise with Peters, La Strada, and Fey, see Doc. 42 at 6–8, shows only that those topics were material; it does not show that responsive records were produced, that the witnesses could answer them, or that the required record chain review was performed. Nor does the Response engage the analyst testimony and exhibits Plaintiff placed in the record. It acknowledges that Plaintiff produced Daniel Hume, Doc. 42 at 8, then addresses

nothing he testified to and none of his exhibits—as the Determination itself left the Haury Declaration and the Hume exhibits unaddressed. See Exs. 7, 8, 10. A tribunal's silence on the complainant's own evidence, on the very questions it was convened to decide, is not the meaningful adjudication of "the issues raised" that the Orders required.

**II. Doc. 36 narrowed one burden; it did not excuse the record chain.**

The Response's central move is to read the Court's April 22 Order as a blanket exemption. It is not. Defendant's own motion asked the Court to "clarify that Defendant is not required to produce its 'audit logs' for every individual voter," Doc. 35 at 1, on the stated ground that a per-voter production "would require the Secretary of State's Office to take a screenshot of each log (for over four million registered voters) and then redact any sensitive data," Doc. 42 at 4. The Court agreed to that narrow point, and only that point: "Defendant is not required to produce the audit logs for every individual voter." Doc. 36. The Order is, by its own terms, a "clarification" of the April 14 Order—not a narrowing of it—and it confines itself to "the audit logs for every individual voter," a phrase it repeats in both its finding and its holding. Id.

Doc. 36 did not address—and Defendant did not ask it to address—system-level audit records, extract or export logs, merge and unmerge histories, snapshots, county upload and import records, or the reconciliation records that Doc. 34 separately required. Doc. 34 ordered production, three days before the hearing, of "all relevant MCVR data, voter history records, snapshots, export files, audit logs, and related records for the 2022 and 2024 federal elections." Doc. 34 at 2. Doc. 36 removed one method-specific item from that list; the remainder stands. The Response nonetheless invokes Doc. 36 against records it never reached—including voter record comments, merge and unmerge records, and source records, see Doc. 42 at 5—none of which is an "audit log for every individual voter," and none of which Doc. 36 mentions. A ruling that per-

voter screenshots are unduly burdensome is not a ruling that the record chain need not exist, need not be preserved, or need not be produced in any form.

Plaintiff's Motion respects that limit. Plaintiff does not seek four million individual voter by voter screenshots—the burden Doc. 36 excused. Plaintiff seeks system-level and aggregate records, and a sworn explanation of what can and cannot be produced and why—relief that Doc. 36 never addressed.

**III. The Response confirms that responsive records existed and were produced after the hearing.**

The Response states that, three days before the hearing, the State produced "all documents in its possession that it could identify as responsive and relevant." Doc. 42 at 5. It then concedes that responsive records existed which were not produced in time. The local election-authority packets —the county source records that feed MCVR—were held "in Archives," and the State provided them only "after the Hearing," through a ShareFile link to "the digitized records that are currently available," together with "instructions on how to view or obtain the records that currently are not digitized." Id.

That is a Doc. 34 timing failure on the State's own account. Doc. 34 required production of all relevant related records three days before the hearing so that Plaintiff could examine the witnesses about them. The county packets are "related records" within Doc. 34, and they are the very records that show how county participation entered MCVR. They existed in Archives throughout. Because the State produced them only after the hearing, Plaintiff could not question Peters, La Strada, or Fey about them while those witnesses were under oath—and the June 1 Determination then issued on a record Plaintiff had no fair opportunity to test. That is precisely

the prejudice the Motion's no reliance relief is meant to prevent, and it confirms the need for a sworn accounting of what else exists and was not produced in time.

## IV. The Response does not answer the record chain dilemma; it confirms it.

The Motion identified a dilemma the State cannot escape: either the records that prove the certified record chain can be produced, or they cannot. The Response does not resolve it. At no point does the State assert that the system-level audit, extract, or reconciliation records can be produced; it argues only that they are "not required" and "not relevant." Doc. 42 at 9.

The hearing record is to the same effect. Director Peters testified that the MCVR audit log captures "every change that's been made" to a voter record, yet also testified that she could not "sit here and under oath testify that [she was] aware of a way to extract the data from an audit log." Ex. 13, HAVA Hr'g Tr. 72:17–73:24, 78:17–79:25. If the audit and reconciliation records can be extracted, they should be produced, because Doc. 36's per-voter burden ruling does not reach them. If they cannot be extracted, then Defendant should say so under oath and explain, in a competent technical declaration, what can and cannot be produced and why. Either answer supports enforcement rather than defeating it: production if the records exist, and a sworn accounting and technical declaration if they do not, before the HAVA process can be treated as meaningfully complete. The State cannot have it both ways, and its silence on extractability confirms the need for enforcement.

## V. The requested relief is enforcement, and it is modest.

The Motion seeks enforcement of the Orders, not review of the Determination's merits, and the Response does not address most of it. The Response does not respond to the request for a sworn category by category accounting, a sworn technical declaration, or the no reliance procedure; it argues only that a hearing occurred. The relief requested is consistent with Doc. 36 and does not

require per-voter audit logs: a sworn accounting of the ordered record categories; a sworn technical declaration explaining what MCVR can and cannot produce, and why; production or protected review—through redaction, protective order, sealed filing, or neutral technical inspection—of the system-level records that remain; continued preservation; a procedure preventing reliance on records produced too late to be tested; and a status conference to set the schedule. Nothing in the Response shows that this relief has been satisfied. To the contrary—by resting on the fact that a hearing occurred, by stretching Doc. 36 beyond its terms, by conceding post hearing production, and by never asserting that the record chain can be produced—the Response confirms that it has not.

**CONCLUSION**

For these reasons, and those stated in the Motion (Doc. 40) and Suggestions in Support (Doc. 41), Plaintiff respectfully requests that the Court grant the Motion to Enforce Docs. 30, 34, and 36 and order the relief requested therein.

Respectfully submitted,

/s/ Constance Kramer
Constance Kramer
Plaintiff, Pro Se
572 Stratford Avenue
St. Louis, Missouri 63130
(314) 359-5828
Connie.Kramer@pm.me
Date: June 30, 2026

**CERTIFICATE OF SERVICE**

I certify that on June 30, 2026, I filed the foregoing with the Clerk of Court using the Court's electronic filing system, which will cause electronic service upon all counsel of record.

/s/ Constance Kramer
Constance Kramer, Plaintiff Pro Se